HALSEY *v.* McCORMICK et al.

The title of a riparian owner is extended by alluvion or dereliction only where the accretion of dry land is by imperceptible degrees.

Where the water is diverted by artificial means, and not imperceptibly, from the land of a proprietor bounded by low water mark, he acquires no title to the derelict bed of the stream.

Whether as against one wrongfully causing an accretion by artificial means, and imperceptibly, the adjoining proprietor would not acquire title, *quere*. *Per* PRATT, J.

APPEAL from the Supreme Court. This was an action against Jacob McCormick, to recover a small piece of land

in the village of Ithaca, lying between what was formerly the north bank of Six Mile creek and the present centre of that creek. The lot of the plaintiff, which, as he claims, covers the land in dispute, is described in a conveyance to one Bennett, under whom he holds, as running "south from the turnpike to the bank of Six Mile creek." Bennett was also the grantor of Jacob McCormick, to whom, subsequently to the deed under which the plaintiff derives title, he con-veyed a parcel of land lying in the bed of Six Mile creek adjoining the land of the plaintiff. The water of the creek having been caused to recede, a strip of dry ground was formed at the foot of the bank, which was the land in dispute in this action.

On the first trial, in 1853, the court held that the plaintiff was bounded on the south by the high water mark of the north bank of the creek. Upon appeal to this court, the judgment was reversed, the court holding that the plaintiff's land extended to low water mark. (3 *Kern.*, 296.) After this decision, the original defendant died, and the action was continued against his executors. Upon the second trial, it appeared that formerly the north bank of the creek, at low water, formed the south line of the land in dispute, but that the original defendant, Jacob McCormick, by deepening the bed of the stream on the south side, and placing stones upon a ridge in the centre, had turned the water so as to leave a portion on the north side of what was the bed of the stream dry, and that upon this portion he had constructed a race to his mill, the north bank of which was the original north bank of the stream.

The cause was tried without a jury, and the judge found as facts "that the south line of the plaintiff's land was north of the premises in question; that the waters of the creek, where they pass the plaintiff's lot, do now, and have for many years, run further to the south than when the dike was erected, and that the change in the channel was caused by artificial means used by Jacob McCormick," the

original defendant, as above indicated. He therefore ordered judgment for the defendants, which was affirmed at general term in the sixth district, and the plaintiff appealed to this court.

*Benjamin G. Ferris*, for the appellant.

*William V. Bruyn*, for the respondents.

PRATT, J. It was settled by this court, when this cause was before it upon a former occasion, that the plaintiff's south line did not originally extend to the centre of the creek, but only to the line of low water on the north bank. Assuming this to be settled, the plaintiff does not claim that as the creek originally ran, the land in dispute was embraced within the boundaries of his lot. But if I understand it, he claims that the land in dispute is alluvion, and he is entitled to it as a riparian owner. But to acquire title to land as alluvion, it is necessary that its increase should be imperceptible — that the amount added in each moment of time should not be perceived. When the change is so gradual as not to be perceived in any one moment of time, the proprietor, whose land on the bank of a river is thus increased, is entitled to the addition. (*Ang. on Water-courses*, § 53; 2 *Bl. Com.*, 262; 3 *Kent*, 519.)

It is enough that no such fact is found in this case, as that this piece of ground is alluvion — that it was formed by imperceptible accretion. The evidence shows that it was not thus formed. McCormick deepened the bed of the stream on the south side, and placed stones along the centre so as to confine the water in the channel thus deepened, and by this means the land in question was left bare. He may have been guilty, by these acts, of a violation of the riparian rights of the plaintiff or his grantors, but I know of no rule of law which would constitute an illegal act of the kind a transfer of the title.

As the case stands, it is not necessary to pass upon the question whether there is a distinction between the case of alluvion formed by natural or artificial means. I find no such distinction in the books. If, by some artificial structure or impediment in the stream, the current should be made to impinge more strongly against one bank, causing it imperceptibly to wear away, and causing a corresponding accretion on the opposite bank, I am not prepared to say that the riparian owner would not be entitled to the alluvion thus formed, especially as against the party who caused it.

If the accretion was formed under all the other circumstances necessary to constitute it alluvion, I can scarcely suppose that a person could successfully resist the otherwise valid claim of the riparian owner, by alleging his own wrong, by showing that the accretion would not have thus formed if he had not himself wrongfully placed impediments in the stream. But that question is not before us. It is enough that this case *does not show* that the land in question was alluvion.

The judgment, therefore, must be affirmed with costs.

COMSTOCK and SELDEN, Js. did not take part in the decision; all the other judges concurring,

*Judgment affirmed.*