THANKFUL P. COOK, Appellant, *v.* CHESTER C. McCLURE, Respondent.

*It seems,* the rule that, where a boundary line is a stream of water, imperceptible accretions to the soil, resulting from natural causes, belong to the riparian owner, applies as well where the boundary is upon an artificial pond as upon a running stream.

In an action of ejectment, plaintiff claimed under a deed conveying premises upon which was a mill and pond.   The boundary line along the pond commenced at " a stake near the high-water mark of the pond," running thence " along the high-water mark of said pond, to the upper end of said pond."   *Held,* that the line thus given was a fixed and permanent one, and did not follow the changes in the high-water mark of the pond; and that defendant, who owned the bank bounded by said line, could not claim any accretions or land left dry in consequence of the water of the pond receding, although the gradual and imperceptible result of natural causes.

*Cook* v. *McClure* (2 N. Y. S. C. [T. & C.], 434) reversed.

(Argued September 28, 1874;  decided October 6, 1874.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant entered upon a verdict. (Reported below, 2 N. Y. S. C. [T. & C.], 434.)

This was an action of ejectment, brought to recover a small

strip of land in Springville, Cattaraugus county, in the pos-
session of the defendant, and upon which he had erected and
maintained for some years a building, used for a store-house.

The claim of the plaintiff was that the strip of land was
formerly covered with the water of a mill pond, caused by
the back flow of the water of Spring creek, by reason of the
erection and maintenance of a mill dam across said creek,
erected and maintained for many years for the supply of a
mill owned and operated by the plaintiff and those under
whom she claimed. The plaintiff and defendant claimed
under the same title and the same grantors. The premises
owned by plaintiff were first deeded; the deed included the
land covered by the pond. The boundary lines between the
lands deeded and those subsequently conveyed and owned by
defendant are given in the deed as follows: "Thence southerly
along said line (i. e., of land owned by the late Jarvis Bloom-
field) to the corner-store standing in the south-west corner
of said Bloomfield's land; thence south fifty-five degrees east
to a stake near the high-water mark of the pond of the
grist-mill; thence north-easterly along the high-water mark
of said pond to the upper end of said pond, or to the
north line of said lot number nine." Evidence was given,
on the part of plaintiff, tending to show that the place where
the defendant's store stood was covered at times, before
he took title, by the waters of said pond, and that the ground
was made in whole or in part by accretions of land and the
subsidence of the waters of the pond, or the changes of the
same, subsequent to the conveyance under which plaintiff
claimed.

The court, among other things, charged the jury: "That
where a man's boundary line is a stream of water, if natural
causes added to the soil by accretion, the soil thus added
belonged to the owner of the bank or shore." Also, "that if
such natural accretion took place when the boundary line was
a pond, such accretion belonged to the adjacent owner where
the accretion was deposited." To which the counsel for the
plaintiff duly excepted.

*John C. Strong* for the appellant. The line was fixed and permanent, *i. e.*, high-water mark at the time of the conveyance under which plaintiff claims. (1 Shep., 198; 13 Pick., 271; 6 Mass., 439.) This could be established by parol. (13 Pick., 261.) Defendant's title only extended to such line and he could claim nothing beyond. (14 Mass., 151; 17 id., 289; 5 Wend., 447; 6 Mass., 439; 6 Wheat., 385; 1 Fairf., 238; *De Jure Maris*, chap. 4.)

*William H. Gurney* for the respondent. The only exceptions are to the charge; this was correct. (Angell on Watercourses, § 53; 3 Kent, 428, 519; *Halsey* v. *McCormick*, 18 N. Y., 147; 2 Bl. Com., 262, 263; *Lockwood* v. *N. Y. C. and H. R. R. R. Co.*, 37 Conn., 387; *Miller* v. *Hepburn*, 8 Bush, 326; *Wetmore* v. *A. W. L. Co.*, 37 Barb., 70, 85.) There is no distinction as to right to accretion between a mill-pond and a running stream. (*Halsey* v. *McCormick*, 13 N. Y., 296.) No exception was taken presenting the question as to whether the verdict was against evidence. (*Clinton* v. *Hope Ins. Co.*, 51 Barb., 647; *Clark* v. *Mayor*, 24 How., 333.)

GROVER, J. The only questions in this case were upon the two exceptions taken by the appellant to the charge to the jury. The judge charged, that where a man's line is a stream of water, if natural causes added to the soil by accretion the soil thus added belonged to the owner of the bank or shore. To this the appellant excepted. He further charged, that if such natural accretion took place where the boundary line was a pond such accretion belonged to the adjacent owner when the accretion was deposited.

The first proposition charged it is scarcely necessary to discuss, as the question involved in the case is more distinctly presented by the exceptions taken to the second. That question is, whether, under the facts of this case, the boundary in the deed under which the plaintiff, by several mesne conveyances, makes title establishes a fixed and per-

.manent line, or whether such line would follow a change in the water of the pond if produced by natural causes. The proof shows that at the time of the conveyance the grantor owned all the lands claimed by both parties. He conveyed the land claimed by the plaintiff, describing the disputed .boundary as follows: Commencing (for this purpose) at a store lately owned by Jarvis Bloomfield standing in the south-west corner of his lot, thence south fifty-five degrees east one chain and seventy-nine links to a stake near the high-water mark ·of the pond of the grist-mill, thence north-easterly along the high-water mark of said pond to the upper end of said pond, or to the north line of said lot number nine. The question is as to this last boundary. The pond was an artificial one, raised by a dam across a running stream, for the purpose of creating power to propel the machinery of mills then owned by the grantor and included in the deed. The proposition, where the boundary is upon a stream is correct, with the qualification that such accretion of alluvium, to inure to the riparian owner must be imperceptible: that the amount added in any moment could not be perceived. (*Halsey* v. *McCormick*, 18 N. Y., 147; 3 Kent, 428; Angell on Water-courses, § 53, and note.) I do not think that there is any distinction in this respect between a boundary upon a running stream of water and a pond. Failing to make this qualification may not have prejudiced the appellant. If his counsel thought it would he should have called attention to it and requested a modification of the charge in this respect.

But this does not reach the real question in the case, that is, whether the boundary was not made by the deed fixed and permanent, so that if the water from natural causes encroached upon the land beyond high-water mark, as it was at the time of the giving the deed covering a portion of such land, the land so covered would not have remained the property of the grantor; and whether, on the other hand, if the water of the pond from such causes had receded so as to leave dry land below the then high-water mark, such land would not be the property of the grantee, or whether the line would con-

tinue to be the high-water mark of the pond as changed by such causes. It may be remarked that the reason given in the cases where the boundary is upon the banks of the stream that it should go to low-water mark, and in some cases for giving the alluvium insensibly formed to the riparian owner — that the party should not be cut off from but continue to have access to the water for use — has no application to the case. The line was fixed at the high-water mark of the pond. Hence, the grantor reserved to himself no interest whatever in the water or the land covered by it. He could not, without trespassing, reach the water at all only when at high-water mark, and then he had no right to or in it for any purpose. The land between high and low-water mark clearly passed to the grantee under the deed. Again, the grantor was under no obligation to keep up the dam or pond. He could cut down the dam and use the land for any purpose he chose. Should the pond from any cause fill up along the disputed boundary he had the right of clearing it out up to the line. Had the bank been partially washed away by the action of the water the grantor had the right of filling in to the line. But these rights would not exist should the line be held to continue at high-water mark, as that might, from time to time, be changed by the action of the water from natural causes. This right, claimed by the defendant, of acquiring title by accretion, if it existed, could be terminated by the plaintiff by a removal of the dam. I think the language of the deed indicates a clear intention to establish a fixed and permanent line, and not one changeable by the changes in the high-water mark of the water in the pond. It follows that the charge, when applied to the facts in this case, was erroneous. The boundary between the parties was the high-water mark at the time of the deed to Bradley and the jury should have been so charged. Whether alluvium had been formed had nothing to do with the case. The evidence was such that the jury may have found that the land in dispute was alluvium, formed by the natural action of the water below this line, and if so, under the charge, they would have

found it was the defendant's; while, if the fact was so, the title was in the plaintiff.

The judgment appealed from must be reversed and a new trial ordered, costs to abide event.

All concur, except CHURCH, Ch. J., not voting.

Judgment reversed.