# ROCKWOOD HOLDEN *v.* JOSEPH S. CHANDLER.

## *Deed.    Boundary by Pond.    Accretions.*

1. A grantor can convey by his deed nothing more than he owns.
2. A deed bounding the premises by a mill pond will convey to the center of the pond, if the owner owns to the center; to the edge, if he owns only to the edge.
3. Where land is bounded by the edge of a mill pond, the boundary is fixed by the location of the edge as it then is, and remains the same afterwards, although a contiguous part of the pond becomes land by gradual accretions.
4. The land so formed belongs to the owner of the pond, and not to the riparian owner.
5. One having the "right to pond" a given tract, may enter for the purpose of removing accumulations and obstructions which interfere with that right.

This was an action of trespass to the freehold. Plea, the general issue. Trial by court at the December Term, 1887, Orange County, Ross, J., presiding.

The trespass complained of was the cutting and carrying away of certain willows and bushes. The court found that the *locus* in question was a part of the original mill pond, which by gradual accretions had become dry land and lay contiguous to the plaintiff's land. No minute of the deeds under which the parties claimed title was furnished the reporter, but the questions raised upon them are sufficiently stated in the opinion.

The court assessed the damages at five dollars, and gave judgment for the plaintiff in that sum with costs. The defendant excepts.

*J. K. Darling* and *R. M. Harvey*, for the defendant.

The effect of the deeds from the defendant's grantors was to reserve all the land covered by the mill pond. *Hatch* v. *Dwight*, 17 Mass. 289, 298; *Jackson* v. *Varmlyea*, 6 Cow. 677; Ang. Wat., ss. 369, 368; *Pattee* v. *Hawes*, 13 Pick. 323; *Rockley* v. *Sprague*, 17 Me. 281; *Butler* v. *Huse*, 63 Me. 447 and cases there cited; *Dunklee* v. *Wilton R. R. Co.*, 24 N. H. 489.

When the description in a deed shows that the premises conveyed are to stop at the water's edge, that will be the boundary. 3 Kent 427.

In these deeds the boundary is the bank, which is the same thing.

If the defendant had the right to flow this land he might enter upon it, to clear it out and remove obstructions. Ang. Wat., ss. 157, 158; *Farley* v. *Waters*, 7 Barr, 221.

In a case like this the accretions do not belong to the adjacent land owner. It is not like alluvion. *Eddy* v. *St. Mars*, 53 Vt. 462.

*Smith & Sloane*, for the plaintiff.

. Gradual accretions which become annexed to the land of the riparian owner belong to him. *Mayor of New Orleans* v. *United States*, 10 Pet. 717; Gould Wat. ss. 148, 155 and cases cited; Ang. Wat. 53, 59; *Newton* v. *Eddy*, 23 Vt. 319; 3 Wash. Real Prop., pp. 60–66; *St. Clair* v. *Lovingston*, 23 Wall. 46; *Wellees* v. *Bailey*, 4 N. E. Rep. 842; *Rex* v. *Yarborough*, 3 B. & C. 91; *Adams* v. *Frothingham*, 3 Mass. 362; *Woodbury* v. *Short*, 17 Vt. 387.

The plaintiff's land is bounded by the mill pond, and that continues to be the boundary, although its location may gradually change. *Newton* v. *Eddy, supra*; *Dunlap* v. *Stetson*, 4 Mason, 349; *Scrutton* v. *Brown*, 4 B. & C. 485.

The opinion of the court was delivered by

TAFT, J. The plaintiff claims under a deed from Sargent's estate and his land is therein described as bounded in part by Waldo's mill pond. On the face of the deed his line would be the center of the pond or stream forming it, but in fact its location would depend upon whether his grantor owned to the center or not. When land is conveyed as bounded by a stream the grantee takes to the center if the grantor owns so far. It is an inference of law that the conveyance carries with it the fee to the center; there is no such inference if the grantor does not own the bed of the stream. *Church* v. *Stiles*, 59 Vt. 642.

It is competent for a riparian proprietor to sell his upland to the edge of the bank and to reserve the stream below the water mark, if he does it by clear and specific boundaries. He may also convey the bed of the stream separate from the lands which bound it. 3 Kent (2d Ed.) 433 ; and see cases cited in Gould Wat. s. 200. In *Eddy* v. *St. Mars*, 53 Vt. 462, the boundary of the land was "on the edge of the pond," and the court said, "this is not the case of a boundary by a stream, which may change by gradual washings and deposits. In this case the territory is limited by a defined boundary without regard to the contingent subsidence of the water constituting the pond, and thereby leaving the land dry." * * * * * "And not only the terms of the description, but the nature and reason of the case evinced the intent to fix a defined boundary of the land, and give ownership to that boundary, on both sides of it." Two deeds in the plaintiff's chain of title plainly indicate that the boundary of his land is the bank of the pond, viz.: the one from Kibbee and Abbott, in 1818 bounding the lot " by the edge of the mill-pond," and one from Sargent to Hebard in 1834, which defines the line as " the bank of said mill-pond." Whatever the description may have been in the subsequent deeds in the defendant's chain of title, the deeds could not convey what the grantors did not own, and the land came to the plaintiff bounded as described in the two deeds above mentioned. Under them upon the authorities *supra*, no title to the land under the pond passed to the grantees, and consequently none passed to the plaintiff by force of the subsequent conveyances. See *Maynard* v. *Weeks*, 41 Vt. 617, as to the application of the same rule in case of land bounded upon a railroad.

The defendant's title as shown, originated under a deed from York to Ainsworth in 1791, which conveyed a saw and grist mill, " with all the mill privileges, viz.: to have liberty to pond as much land as the pond now flows ;" and this right has come to the defendant. The place on which the alleged trespasses were committed was originally a part of the pond that, by gradual accumulations and accretions, had become land. At the trial

below judgment was rendered for the plaintiff. This was error unless the plaintiff owned the accretions formed in the pond opposite his land. He did not, for two reasons : *First*, his land was bounded by the edge of the pond; he had no interest in the bed of the pond and could gain nothing by accretion; there was no question of alluvion in the case. If a person owns to the center of a stream, his line remains at the center however variable, but if his line is a fixed and permanent one, his boundaries are not enlarged by the receding of the stream. *Cook* v. *McClure*, 58 N. Y. 437. We think the case of *Eddy* v. *St. Mars*, *supra*, decisive of this case. The plaintiff's land was bounded "on the edge of the pond," and the court held he had no title to the accretion. We have no occasion to discuss the question of whether there is a difference between the case of an artificial pond and that of a running stream. *Second*, the defendant owns a mill and dam with a right to pond as much land as the pond flowed in 1791. No question of adverse possession is before us. The defendant has the right to enter the pond and clean it, remove such obstructions as may be therein, whether caused by freshets or by gradual accretion, otherwise he might lose his pond. *Frailey* v. *Waters*, 7 Pa. St. 221.

*Judgment reversed and cause remanded.*