OLSON v. HUNTAMER *et al.*

1.   For the purpose of determining  the quantity of land for which a pur-
     chaser must pay, meander lines are run along the  margin of non-navi-
     gable lakes and ponds, and not for the purpose of limiting to such lines
     the title of a grantee or claimant under the United States land laws.

2.   By the settled course of the common law and  the latest  decisions of the
     land department, a grantee of  real property contiguous to such lake or
     pond takes to the center thereof, ratably with other riparian owners, if
     there be such; and a  timber  culture entryman, who has filed  upon a
     lot bordering upon such a lake or pond, receives, upon  a full compli-
     ance with the law, a patent from the government, which conveys to
     him, a fee-simple  title to such lot, together with any reliction to the
     center of the lake, occasioned by  the gradual  recession or impercept-
     ible drying up of the water therein after the date of his filing.

3.   Under the law of this state a  settler upon public land previously unoc-
     cupied, who has placed a timber culture  filing thereon, and is in good
     faith complying with  the laws of  congress in  relation  thereto, is en-
     titled, as against third persons, to the possession of all the land that he
     will ultimately take by  his patent; and under  sufficient pleadings and
     proof he may recover damages for the wrongful occupation of the same,
     and as against trespassers  who have  forcibly ejected or excluded him

therefrom he may recover three times such a sum as would compensate for the detriment thus caused.   Comp. Laws, section 4601, 4610.

(Syllabus by the Court.   Opinion filed Dec. 15, 1894.)

Appeal from circuit court, Minnehaha county. , Hon. FRANK R. AIKENS, Judge.

Action to recover the value of crops.   Judgment was rendered for defendants, and plaintiff appeals.   Affirmed.

The facts are fully stated in the opinion.

*David Winton* and *Davis, Lyon & Gates,* for appellants.

The accretions to lots contiguous to non-navigable lakes extend to the middle line of such lake by force of the common law rule in such cases in the absence of a different rule established by state decisions or by local statutes.    Hardin v. Jorden, 140 U. S. 371; 35 L. Ed. 428; *In re* John P. Hole, 13 Land Dec. 588; *in re* Amanda Hinds, 18 Copps L. Owner 275; Gouveneur v. National, 134 N. Y. 355; Lamprey v. State, 18 L. R. A. 670; 53 N. W. 1139.

Actual possession of a part is legal possession of all the land covered by the party's title.   3 Washburn 165; Gardner v. Goock, 48 Me. 487; Hardesty v. Glenn, 32 Ill. 64; Barbour v. Trustees, 51 Ill. 396; Cooley Torts, 322.    Constructive possession exists where one claims to own by virtue of some title without having the actual occupancy, as where the owner of a tract of land regularly laid out is in possession of a part he is constructively in possesion of the whole.   Fleming v. Maddox, 30 Ia. 241; 18 Am. & Eng. Ency. Law 842.   Occupancy may consist of cultivation and use without actual residence, 17 Am. & E. Ency. Law 30; People v. State Treas. 7 Mich. 369. Actual or constructive possession without any proof of title to the soil or freehold is sufficient to support an action against a wrongdoer.   The wrongdoer has no right to put the other to proof of title.   1 Add. on Torts 371; Catterlin v. Douglas, 17 Ind. 213; Larne v. Russell, 26 Ind. 386; Moore v. Campbell, 15 N. H. 208; Barstow v. Sprague, 40 N. H. 27; Black v. Grant, 50 Me. 364.   Having the title to the property and being in ac-.

tual possession of it, the defendants, by forcibly taking it from him and converting it to their own use, become liable for its value at the time of such taking. 2 Kent Com. 363; Selsbury v. McCoon, 3 N. Y. 379; Bolles v. U. S., 27 L. Ed 230; U. S. v. Williams, 18 Fed. 475; Barron v. Cableight, 11 N. H., 557; Willard v. Rice, 11 Metc. 493; Hesseltent v. Stockwell, 30 Me. 237; Davis v. Essley, 13 Ill. 192; Hunt v. Rich, 38 Me. 195; Rice v. Hollenback, 19 Barb. 664; Black v. Grant, 50 Me. 364; Murphy v. Sioux City, 55 Ia. 473; Isle v. Hertin, 37 Mich. 332; Gates v. Rifle, 70 Mich, 316. Crops sowed on land by a stranger to the title and without authority or consent of the owner belong to the owner of the soil. Foreman v. McLemean, 26 Kan. 151; Crotty v. Collins, 13 Ill. 567; Thomas v. Moody, 11 Me. 139; Simpkins v. Rogers, 15 Ill. 397; Murphy v. Railroad, 55 Ia. 473; Comp. Laws, sec. 3219.

*Murray & Porter* and *Stoddard & Wilson,* for respondents.

A lot is a fraction of a quarter section containing not to exceed forty acres, and an entryman of a lot cannot acquire title to more than forty acres. St. Paul v. Sturnier, 19 N. W. 74; Palmer v. Dodd, 31 N. W. 209; Wooden v. Lawson, 39 N. W. 415; Boom v. Adams, 6 N. W. 857; Keyser v. Sutherland, 26 N. W. 868; Wilson v. Hoffman, 20 N. W. 37. If any part of the lot in controversy was covered by water at date of plaintiff's entry and so remained, and was covered with water at date of his proof, the land under the water at date of patent and by patent will pass from the United States to plaintiff. Clute v. Fisher, 31 N. W. 614; Whitney v. Lumber, 47 N. W. 425. If plaintiff held legal title to lot one, then perhaps he might set up a claim that he had constructive possession of the accretion. But in case of trespass constructive possession is not sufficient. Gonsolus. v. Seymour, 12 N. W. 63; Thompson v. Burhone, 61 N. Y. 68; Edwords v. Noyrs, 65 N. Y. 125; Monroe v. Merchant, 28 N. Y. 9; Garrotson v. Sampson, 15 Cal. 93; Coryell v. Caine, 16 Cal. 567; Jackson v. Warford, 7 Wend. 62; Forbes v. Dressell, 31 N. W. 637; Washburn v. Cutter, 17 Minn. 335; Page v.

Fowler, 28 Cal. 605; Rathborn v. Boyd, 2 Pac. 664; Stockwell v. Phelps, 34 N. Y. 363; DeMott v. Hogeman, 8 Conn. 219; Halleck v. Mixer, 16 Cal. 575; Caldwell v. Castard, 7 Kan. 303; Pennybocker v. Dougal, 46 Cal. 661.

Nothing but a patent passes title to public lands open to disposal and sale through the general land office. Forbes v. Drescall, 31 N. W. 641; U. S. v. Schurz, 102 378; Vanlongerin v. Hefferman, 38 N. W. 67.

Before there can be a right to an accession or accretion there must be an estate to which it can attach. Sunth v. Logan, 1 Pac. 678; 18 N. S. Lawyers Ed. 446. The title to real estate cannot be tried and settled in an action for conversion or replevin. Page v. Fowler, 28 Cal. 605; Stockwell v. Phelps, 34 N. Y. 363; Riewe v. McCormick, 9 N. W. 88; Cobbey on Replev. sec. 56. A grantee by patent of a legal subdivision of government land by virtue of it can derive no title to land within another subdivision. Wilson v. Hoffman, 20 N. W. 37; Clute v. Fisher, 31 N. W. 614; Lincolen v. Davis, 19 N. W. 103; Diedrich v. Railroad, 42 Wis. 262; Chapman v. Railroad, 33 Wis. 629; Lally v. Rossman, 51 N. W. 1132.

FULLER, J.   This action, based upon the rights of an alleged riparian owner, was instituted to recover the value of certain crops sown, cultivated and harvested by the defendants, during the year 1890, upon a portion of a meandered lake bed contiguous to a tract of land designated upon the recorded plat as "lot (1), of section (3), Twp. (104) north, of range (51) west of the 5th P. M.," which was covered by a timber culture entry made by plaintiff on the 4th day of October, 1889; and by virtue of section 4610 of the Compiled Laws, which relates to the measure of damages in case a person is forcibly ejected from real property to which he is entitled, the plaintiff seeks to recover three times the value of the crops grown thereon by and appropriated to the use of the defendants during the year 1891.   After issue was joined by the answer of defendants the case was sent to a referee, who found in effect, as matters of fact:  That plaintiff made the timber culture entry as alleged

in his complaint, and had cultivated said lot 1 in full compliance with the law, at all times subsequent to the date of said entry and issuance from the United States land office of the receiver's receipt therefor on the 4th day of October, 1889. That the government survey of said township 104 was made in the year 1867, and "a correct copy of a plat [enlarged to double size] drawn from the official plat book of Minnehaha county, of section (3), township one hundred four (104) north, of range (51) west 5th P. M., with courses and distances noted thereon, taken from said plat and the official field notes of the United States survey of said section, showing lot number one, in addition thereto the accretion to said lot therein extending to the middle of the lake bed west of said lot one, computed from said field notes, is as follows":

—That the lake included within said meandered lines was non-navigable, and gradually dried up, and became tillable in the spring of 1890. That without objection on the part of plaintiff, defendants, in the spring of 1890, entered upon the accretion to said lot 1, and raised and secured to their own use a crop of flax, of the value of $135. That in the spring of 1891, while plaintiff was engaged in plowing said accretion, and after he had plowed about 25 acres thereof, defendants unlawfully and with force and violence ejected plaintiff therefrom, and forcibly took possession of the same, and without his consent, and against his will, sowed thereon and raised a crop of barley of the value of $684, and converted the same to their own use. The twelfth and last finding of fact is as follows: "That the accretion of said lot one, as claimed by plaintiff, extends to the middle of said lake bed, and bounded as follows: Commencing at a point where the south boundary of said lot intersects the eastern meander line of said lake bed; thence west along a straight extension of said south boundary sixteen and eighty one-hundredths chains (16.80 ch.); thence N., 26 degrees 20 minutes W., six and sixty one-hundredths chains (60.60 ch.); thence N., 35 degrees 35 minutes W., thirteen and thirty one-hundredths chains (13.30ch.), to the county line; then easterly along said county line twenty-seven chains and twenty-seven and fifty one-hundredths links (27 ch. 27.50 links), to its intersection with the eastern meander line; thence along said meander line to the place of beginning—containing thirty-eight and ten one-hundredths acres." As conclusions of law, the referee found: "(1) The title to lot one, and whatever reliction may belong to the same, being in the United States at the present time and at the time of the grievance complained of, this court possesses no jurisdiction to adjudicate as to the title of said lot one or the reliction claimed. (2) If the referee is in error in conclusion of law No. 1, then he is of the opinion that there has been no such title or possession shown

on the part of the plaintiff as would warrant the court in rendering judgment for the plaintiff. (3) If the referee is in error in conclusion No. 1 and No. 2, then he is of the opinion that the remedy of the plaintiff is confined to damages for the use and occupation of the land, and not for the value of the crops. (4). In the opinion of the referee, the action of the plaintiff ought to be dismissed." From a judgment accordingly entered in defendant's favor and against plaintiff for costs and disbursements, amounting to $75.27, and from an order overruling a motion for a new trial, plaintiff appeals.

No fault is found by appellant's counsel with the findings of fact, and their assignments of error relate to the conclusions of law and the judgment entered thereon, together with the rulings of the court in denying appellant's motion to strike out said conclusions of law made by the referee, and substitute in place thereof conclusions of law in plaintiff's favor, which were consistent with the theory of plaintiff's counsel, and which would justify a judgment in plaintiff's favor for the value of the crop of 1890, and three times the value of the crop of 1891, amounting in the aggregate to the sum of $2,187, exclusive of costs and disbursements. We are therefore called upon to determine the riparian rights, if any exist, before the issuance of his patent, to a timber culture entryman, who has filed upon and is complying with the law in relation to land bordering upon and contiguous to a non-navigable lake which has imperceptibly and gradually dried up and become tillable land since the date of his filing upon land adjacent thereto. As against every one but the government, the plainest principles of equity and public policy would suggest that one who becomes a homestead or timber culture entryman upon public lands previously unoccupied, and is complying fully with the laws of congress with a view to becoming the absolute owner thereof, has an equity therein which entitles him to the protection of the courts, and all the privileges and incidents which appertain to the soil, and as against trespassers thereon he has all the rights of an

owner.   Our statutes relating to damages for the laying out of highways upon and over land claimed under the United States land laws place an occupant thereof upon an equal footing with an owner of the fee, and for any injury done in any manner to land so settled upon, or to recover the possession thereof when wrongfully occupied, he may maintain an action in the courts of this state, in the same manner and with like effect as though he possessed a fee-simple title to the land thus claimed and occupied.   Comp. Laws, §§ 1226, 5464; Carner v. Railway Co., (Minn.) 45 N. W. 713.   The entry of lot 1 under the timber culture act, and the subsequent compliance therewith in good faith during the term required to perfect his right to a patent, would make plaintiff at all times while so conforming to the requirements of law an owner thereof as against third persons; and in our opinion, as against trespassers, he is now entitled to all the privileges of use and occupation that he will enjoy after he has received a patent by which he will become the absolute owner of lot 1 and the reliction thereto, as defined by the referee and indicated upon the accompaning plat.

The evidence is not before us, and there is nothing in the referee's very complete and carefully prepared findings of fact indicating that defendants attempted to justify their action in ejecting and excluding plaintiff from the land in controversy by showing that they had any claim or right thereto, either legal or equitable; and the case of Forbes v. Driscoll, 4 Dak. 336, 31 N. W. 633, upon which respondents in a measure rely, and which was a contest between rival pre-emptors, each relying upon a declaratory statement or notice to claim the land, which conferred no rights as against any one, outside the land actually settled upon, has no application to the case of a homestead or timber culture entryman, who has settled upon the land contiguous to a meandard, nonnavigable lake or pond, and the department of the interior and the decisions of the general land office make no distinction in this regard between the rights of an entryman who is complying with the law and one to whom

the patent has been issued, and it is declared that the land covered by such lake or within the meandered lines does not belong to the government, but to the adjoining proprietors, under the common-law right of riparian ownership. Application of Hoel, 13 Dec. Dep. Int. 588; Instructions of Department of Interior to Com. Gen. Land Office, 14 Dec. Dept. Int. 119; Black, Pom. Water Rights, 36. As our statute contains no specific provision relating to a riparian proprietor of land contiguous to a meandered, nonnavigable lake, we are properly influenced by the decisions of the general land office in concluding that plaintiff is entitled to the privileges of such a proprietor; and governed by the principals of justice and the dictates of a sound public policy, we will look to the common law to definitely ascertain the nature and extent of his rights. Section 2, c. 105, Laws 1890.

We are disposed to believe that plaintiff by complying with the law, and by virture of his entry and payment to the government of all the money that will ever be required as compensation for lot 1, is entitled to the exclusive use and occupation of all the land that he will eventually take under his patent when the same is issued. In the case of Hardin v. Jordon, 140 U. S. 372, 11 Sup. Ct. 808, 838, in holding that a grant of land contiguous to a lake, like the one under consideration, extends to the center thereof, the court, speaking through Justice Bradley says: "It has been the practice of the government from its origin, disposing of the public lands, to measure the price to be paid for them by the quantity of upland granted, no charge being made for the lands under the bed of the stream or other body of water. The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose or limiting the title of the grantee to such meander lines. * * * It has never been held that the lands under water in front of such grants are reserved to the United States, or that they can afterwards be granted out to other persons, to

the injury of the original grantees. The attempt to make such grants is calculated to render titles uncertain, and to derogate from the value of natural boundaries, like streams and bodies of water. * * * So strictly has this principle been followed that even in the case of lands bordering on the Mississippi river, acknowledged to be one of the most important of navigable streams in the world, the rules of the common law, which extend the title of the riparian owner to the center of the stream, have been seduiously observed; and we believe that there was never any departure from this course of dicision until the case of Trustees v. Schroll (120 Ill. 509, 12 N. E. 243), which we regard as altogether exceptional, and insufficient to effect a change in the general rule. * * * When land is bounded by a lake or pond, the water, equally as in the case of a river, is appurtenant to it. It constitutes one of the advantages of its situation, and a material part of its value, and enters largely into the consideration for acquiring it. Hence the presumption is that a grant of land thus bounded is intended to include the contiguous land covered by water. Besides, a lake or pond, like a river, is a concrete object, a unite; and when named as a boundary the natural inference is that the middle line of it is intended,—that is, the line equidistant from the land on either side." To the same effect and purpose, see Mitchell v. Smale, 140 U. S. 406, 11 Sup. Ct. 819, 840; Railroad Co. v. Schurmeir, 7 Wall. 272; Gouverneur v. Ice Co., 134 N. Y. 355, 31 N. E. 865; Lamprey v. Metcalf (Minn.) 53 N. W. 1139; Fuller v. Dauphin, 124 Ill. 542, 16 N. E. 917; Ledyard v. Ten Eyck 36 Barb. 102; Ridgway v. Ludlow, 53 Ind. 248; Warren v. Chambers, 25 Ark. 120; Cook v. McClure, 58 N. Y. 437.

It is not unreasonable to presume that appellant placed a timber culture filing upon lot 1 with a view to obtaining water from the adjacent lake, with which to irrigate and promote the growth of his trees; and, now that the water has gradually receded and imperceptibly dried up, it would be grossly unjust to hold that strangers without a color of right or title may take

possession of the reliction thus caused, and with impunity eject him from land coextensive with the entry he has made, and to which he may ultimately acquire from the government the absolute and indefeasible title.   True, his right to the continued use and occupation of the dereliction designated upon the plat, and found by the referee to be 38.10 acres, as well as his right to finally obtain a patent by which he becomes the absolute owner thereof, as an incident or appurtenance to lot 1, depends entirely upon whether or not he continues to comply with the law; and the fact that he may fail in that regard, and forfeit to the government all his rights as an entryman, is not a contingency to be considered as bearing upon the case before us. Carner v. Railway Co., *supra.*   No real property is without a proprietor authorized to occupy or exercise dominion over the same, and the right to use land within the lines by which a non-navigable lake was meandered by the government survey is vested by the decision of the general land office in persons who have filed upon lots contiguous thereto; and so long as they comply with the law in relation to settlement and improvements, the courts will extend to them such protection as the statutes of this state afford.

The foregoing views lead to the conclusion that a timber culture entryman who has filed upon and occupies a lot contiguous to a meandered, non-navigable lake which has, subsequent to his entry become dry and tillable, is entitled as against strangers to the possession of said lot under the provisions of our statute, together with the possession of such reliction thereto belonging under the common-law rule of riparian proprietorship, so long as he continues to comply with the law in good faith, and for the purpose of obtaining title from the government; and we therefore hold that plaintiff in this case was and is entitled to the possession of 38.10 acres of the lake bed within the meandered lines described in the findings of fact and as designated upon the recorded plat, and proof of defendant's wrongful occupation of the same during the year 1890, as

alleged in the complaint, would entitle plaintiff to recover, under a proper allegation and upon sufficient proof, the value of the use of the property during the time the defendants wrongfully occupied the same, and the costs, if any, of recovering the possession, as provided in article 2, c. 2, Comp. Laws, sec. 4601: ''The detriment caused by the wrongful occupation of real property, in cases not embraced in section  *  *  *  4610, is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the right to damages, and the costs, if any, of recovering the possession." The referee found, in effect, that in the spring of 1891, while plaintiff was in the peaceable possession and occupation of the reliction to lot 1, and was engaged in preparing the same for the seed, the defendants, by the use of force and personal violence, ejected and excluded plaintiff therefrom, and wrongfully occupied the same during the year 1891; and it would seem that plaintiff would be entitled, under a proper allegation and sufficient proof of damages, to recover according to the provisions of section 4610, which is as follows: ''For forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to him by the act complained of." Plaintiff having brought his action specifically to recover the value of the 1890 crop and three times the value of the crop of 1891, and there being no evidence before the referee or court by which the damages, under the rule fixed by statute, could be measured or ascertained, and the case being tried without a jury, the complaint was properly dismissed at plaintiff's costs, without prejudice to an action to recover in accordance with sections 4601 and 4610 of the Compiled Laws. The judgment of dismissal and for costs is therefore affirmed.