Rockingham, {
Dec. 4, 1902. }

## JENKINS v. PALMER & a.

In an action of trespass *quare clausum*, a plaintiff in possession of the *locus in quo* is entitled to judgment as against one who shows no superior right.

TRESPASS *quare clausum*. Facts found by referees to whom were referred (by the parties to the action and certain other persons asserting rights in the bed of Nilus river, the adjacent land, and the dam across the same) all questions arising in the action, and all questions relating to "all rights, privileges, estates, and easements in and to the premises," with a provision that the determination by the referees of questions of fact should be final and that questions of law should be transferred to this court for decision at the request of either party. The referees found one of the defendants guilty of a technical trespass. Transferred from the April term, 1902, of the superior court by *Pike*, J.

The *locus in quo* was an artificial pond in Hampton, containing thirty acres or more, created by the dam hereinafter mentioned across Nilus river—a small, non-navigable stream. The plaintiff's title originated from, and includes all rights granted by, the following vote of the town of Hampton, passed September 17, 1686: "Upon the motion of John Tuck to the town, the town have acted by vote to grant him liberty to sit up a grist and fulling mill upon Nilus river and to make convenient dam or dams for the same, provided that he shall not draw down water to damnify any man in their hay-time in any of their meadows that lay upon that river, upon the penaltie of one hundred pounds, and that the said mill be built and finished within two years after the date hereof, or otherways this grant to be void and to remain to the town as formerly." Soon after the passage of the vote a dam was built across the Nilus river, and a grist-mill was erected below it

upon a site bounded northerly by the pond so created; and they have been maintained in the same locations to the present time, without any material change in the height of the dam or of the water in the pond.

The town made an allotment of land in 1738. Lot 42 is bounded, " northerly on Tuck's mill-pond from the easterly end of the foot-dam to the mill-gate, and from the mill-gate to the mill-way, . . . southerly and easterly on said way that leads to Tuck's mill, . . . westerly on part of the 47th lot on a line from the east corner of the foot-dam to a stake standing on ye northerly side of said way leading to Tuck's mill, which is the northeasterly bound of the 47th lot." Some part of Lot 42 is now in possession of two of the defendants (one of whom is the person found guilty of a technical trespass), and has been in possession of their predecessors in the title since the allotment. The other defendants are owners of land about the pond.

The grist-mill has not been run since 1886. The plaintiff repaired it and the dam in 1897, at an expense of more than $300. He removed the stones, but intended to replace them and run the mill.

*Eastman & Hollis*, for the plaintiff.

*Thomas Leavitt* and *Frink, Marvin & Batchelder*, for the defendants.

CHASE, J.    The finding of the referees, that one of the defendants was guilty of a technical trespass, includes a finding that the plaintiff was in possession of the pond. The possession entitles him to a judgment in the action, unless the facts reported show that the defendant against whom the finding was made had a better right of possession. *Fowler* v. *Owen*, 68 N. H. 270, 272, and authorities cited. It appears that some part of Lot 42 is in possession of this defendant and another, and has been in the possession of them and their predecessors in title since the original allotment, made in 1738, about fifty years after the passage of the vote which was the origin of the plaintiff's title. This lot is bounded " northerly on Tuck's mill-pond from the easterly end of the foot-dam to the mill-gate, and from the mill-gate to the mill-way, . . . southerly," etc. The pond being artificial, if the northerly boundary had been " Tuck's mill-pond " simply, without any qualification, the boundary line would probably be the center of the pond or the thread of Nilus river. *Mansur* v. *Blake*, 62 Me. 38, 41; *Holden* v. *Chandler*, 61 Vt. 291; *Waterman* v. *Johnson*, 13 Pick. 261, 265; *Phinney* v. *Watts*, 9 Gray 269;

*Paine* v. *Woods*, 108 Mass. 160, 169, *et seq.*; *Mill River Mfg. Co.* v. *Smith*, 34 Conn. 462; *Wheeler* v. *Spinola*, 54 N. Y. 377. In that case the owners of that portion of the lot bordering upon the pond would have an interest in the land submerged by the pond, unless the vote of 1686 granted to Tuck and his successors in title the fee of such land. Such owners would be in a position that would enable them to contest the plaintiff's title and right of possession. But the qualifying words in the description,—" from the easterly end of the foot-dam to the mill-gate, and from the mill-gate to the mill-way,"—have a tendency to show that the line intended was the margin of the pond. A misunderstanding of the description is quite likely to occur in the absence of a plan showing the location of the pond, the river, the foot-bridge, the mill-gate, the mill-way, and the lines of surrounding lots. It may be that a correct understanding of the description as applied to the objects mentioned would show that the center of the pond or the thread of the river was intended, notwithstanding the use of the qualifying words. *Kent* v. *Taylor*, 64 N. H. 489. If it should turn out that the margin of the pond is the boundary line, thus excluding the pond from Lot 42, the guilty defendant would have no defence to the action upon the facts reported. Indeed, the case does not show that he would have a defence if the center of the pond or the river is the boundary line, for possession of some part of the lot is not necessarily possession of that part bordering on the pond and river. The other defendants, although owners of land about the pond, may have no rights in the pond or its bed.

It not appearing that the defendants have rights that conflict with those which the plaintiff asserts, it would be a useless task to attempt to render a decision as to the character of the latter. Although such a decision would bind the parties to the action and the agreement for reference, it might not bind those (if any there be) who really have interests that are adverse to the plaintiff's. As the case stands, there should be judgment in favor of the plaintiff.

*Case discharged.*

All concurred.