HILLEBRAND, Respondent, v. KNAPP, Appellant.

(274 N. W. 821)

(File No. 8044. Opinion filed August 13, 1937)

*W. G. Waddel* and *I. S. Coomes,* both of Webster, for Appellant.

*Rex W. Harris,* of Webster, for Respondent.

ROBERTS, J. Rush Lake during periods of normal rainfall is a body of water with an area of about 3,000 acres. When the government survey of contiguous land was made, this lake was meandered. There has been a recession of waters occasioned by years of drouth until this former lake bed is dry. Plaintiff owner of lots or fractional divisions bordering on the meander line instituted this action to enjoin defendant from cutting and removing hay from the portion of the lake bed within the meandered line contiguous to the land of the plaintiff. Defendant denies that plaintiff has any right, title, or interest in and to any portion of the lake bed and claims that the privilege of cutting and removing hay is a common right in the public and that plaintiff has no greater right to the portion of the lake bed in controversy than the defendant. Judgment was entered in favor of the plaintiff, and defendant appeals.

The rights of riparian owners have been declared in numerous decisions of this court, but the precise question presented in the instant case has not been adjudicated. A division of waters into navigable and nonnavigable is recognized by the statutory law of this state. Section 262, Rev. Code 1919, provides: "The ownership of land below ordinary high water mark, and of land below the water of a navigable lake or stream, is regulated by

the laws of the United States or by such laws of the state as the legislature may enact. The state is the owner of all property lawfully appropriated or dedicated to its own use, and of all property of which there is no other owner."

Section 359, Rev. Code 1919, provides: "Except where the grant under which the land is held indicates a different intent, the owner of the upland, when it borders upon a navigable lake or stream, takes to the edge of the lake or stream at low water mark, and all navigable rivers shall remain and be deemed public highways. In all cases where the opposite banks of any streams not navigable belong to different persons, the stream and the bed thereof shall become common to both."

In the early history of the common law the rights of the public in navigable waters were confined to navigation. But the term "navigable" has been extended and includes waters that are not navigable in the ordinary sense. In Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796, 798, it was held, after a consideration of the statutory provisions quoted and a review of many of the leading cases, that whether or not waters are navigable depends upon the natural availability of waters for public purposes taking into consideration the natural character and surroundings of a lake or stream. This division of lakes and streams into navigable and non-navigable is the equivalent to a classification of public and private waters. Thus in Lamprey v. State (Metcalf), 52 Minn. 181, 53 N. W. 1139, 1143, 18 L. R. A. 670, 38 Am. St. Rep. 541, the court said: "Many, if not the most, of the meandered lakes of this state, are not adapted to, and probably will never be used to any great extent for, commercial navigation; but they are used—and as population increases, and towns and cities are built up in their vicinity, will be still more used—by the people for sailing, rowing, fishing, fowling, bathing, skating, taking water for domestic, agricultural, and even city purposes, cutting ice, and other public purposes which cannot now be enumerated or even anticipated. To hand over all these lakes to private ownership, under any old or narrow test of navigability, would be a great wrong upon the public for all time, the extent of which cannot, perhaps, be now even anticipated."

It was decided by this court in the case of Olson v.

Huntamer, 6 S. D. 364, 61 N. W. 479, that where a meandered lake is nonnavigable the patentee of land bordering thereon takes title to the middle of the lake, proportionately with other riparian owners. As to navigable lakes and streams, the state holds title below ordinary low-water mark and the land between such boundary and the ordinary high-water mark is subject to certain public uses which we need not consider. The state holds title to the bed of such lake or stream not in a proprietary capacity, but in trust for the people that they may enjoy the use of navigable waters for fishing, boating, and other public purposes freed of interference of private parties. Flisrand v. Madson, supra; Anderson v. Ray, 37 S. D. 17, 156 N. W. 591; State ex rel. Clark v. Deisch, 38 S. D. 560, 162 N. W. 365; Karterud v. Karterud, 47 S. D. 58, 195 N. W. 972. The question of title to beds of lakes is the subject of an annotation in 23 A. L. R. 757.

The owner of land bounded upon navigable waters has certain rights therein which are not dependent upon the ownership of the soil under the waters, but upon his title to the banks. He cannot be deprived of these rights for private purposes in any event and they cannot be taken from him for public purposes unless adequate compensation is paid. Parsons v. City of Sioux Falls, 65 S. D. 145, 272 N. W. 288. In 27 R. C. L. p. 1073, it is said: "Riparian rights are the result of that full dominion which every one has over his own land, by which he is authorized to keep all others from coming upon it except on his own terms. They are defined as the rights of the owner of lands upon water to maintain his adjacency to it, and to profit by this advantage, and otherwise as a right to preserve and improve the connection of his property with the water. Those rights are not common to the citizens at large, but exist as incidents to the right of soil itself contiguous to and attingent on the water. In such ownership they have their origin and not out of the ownership of the bed, and they are the same whether the riparian owner owns the soil under the water or not." Such owner has the right to the use of the water and has the right of access to it for that purpose. He has the title to the reliction caused by the gradual recession of the waters and to the accretion caused by the deposit of sand, dirt, or sediment thereon by contiguous waters. Plaintiff contends that

when waters recede so far as to be capable no longer of any beneficial use to the public the lake is no longer public or navigable and becomes the property of riparian owners. The statute recognizes acquisition of land by accretion and reliction (section 498 et seq. Rev. Code 1919), but the mere temporary recession of waters occasioned by seasons does not constitute a reliction in the sense of an addition to the contiguous lands. It was said in Flisrand v. Madson, supra, that "Reliction is land added to a tract fronting upon the waters of a lake, pond, or stream, by the permanent uncovering of the land—the laying bare of the bottom by the permanent retirement of the waters, never to return again. The temporary subsidence of the waters occasioned by the seasons, or by periods of drought, does not constitute reliction in the sense of an addition to the contiguous land. Reliction is said to rest in the law of nature, and is analogous to the right of the owner of a tree to its fruit. Reliction is a permanent change that takes place by gradual and imperceptible degrees. Where water periodically rises over land and then recedes, there is no reliction."

In Anderson v. Ray, supra, which involved the authority of the board of county commissioners of Brule county to drill artesian wells for the purpose of filling and maintaining a sufficient stage of water in Red Lake to make it available for fishing and other public purposes, this court held that reliction had not taken place and that riparian owners could not complain if the level of the lake was raised to the ordinary high-water mark; that the control of the state for the purpose of the trust was not lost by reason of the fact that during a series of dry seasons the lake became entirely dry. It appears from this record that the size, character, and condition of Rush Lake are similar and we are of the opinion that the question of reliction is controlled by the conclusion of this court in the Anderson Case. It is admitted that this lake in its ordinary state is navigable within the accepted meaning of that term, and we cannot concede that temporary nonnavigability divests the state of title to the lake bed. The drying up of the water did not result in gradual and imperceptible increment to the lands of the plaintiff.

If the right of ownership has not been extended by either accretion or reliction, it follows that plaintiff has acquired no

vested or prior right to the portion of the lake bed below the ordinary low-water mark which is in controversy. Sapp v. Frazier, 51 La. Ann. 1718, 26 So. 378, 72 Am. St. Rep. 493. In this action to restrain interference with possession of real property, the plaintiff cannot question defendant's right of possession before making a prima facie case of actionable right in himself. Whether there is a common right in the public to cut and remove hay from the lake bed entitling the defendant to entry for such purpose it is not necessary to decide. .

The judgment appealed from is reversed.

RUDOLPH, P. J., and WARREN and SMITH, JJ., concur.

POLLEY, J., (dissenting). I am not able to agree with the majority of the court in this case. It has been the law since time immemorial that the land of a riparian owner is bounded by the water's edge, and if the water recedes, his boundary follows the water's edge until the water dries up entirely. This doctrine was recognized in the cases of Lamprey v. State (Metcalf), 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541, and Hardin v. Jordan, 140 U. S. 371, 372, 11 S. Ct. 808, 838, 35 L. Ed. 428, and see section 498, R. C. 1919. The exact question involved in this case was before this court in Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479. In the majority opinion the cases of Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796, and Anderson v. Ray, 37 S. D. 17, 156 N. W. 591, are cited. The questions that were considered by the court in those cases are not involved in this case in any manner whatever. The only questions that were considered in those cases are the rights of the public in the water in a lake, and the right of the public to maintain the water level to high-water mark by artificial means. The right of a third party,— a mere interloper—to exclude a riparian owner from the use of land laid bare by the recession of the water below his meander line was not involved, nor thought of, and certainly not considered by the court when those cases were decided.

The facts in this case are on all fours with the facts in Olson v. Huntamer, supra. But in that case the lake involved is referred to as a nonnavigable lake. This fact is stressed in the majority opinion. But no rights are based upon this fact, and in

the Flisrand Case, it is made very clear that as far as the rights of a riparian owner are concerned there is no difference whatever between a navigable lake and a nonnavigable lake. Indeed, those terms have no significance whatever. If any lake in South Dakota is a navigable lake, then every lake in the state is a navigable lake; and if any lake in the state is nonnavigable, then every lake in the state is nonnavigable for they are all exactly alike, all flat bottomed shallow lakes. During wet seasons they fill with water to high-water mark, and during dry seasons the water recedes from the high-water mark until, if the drought continues long enough, they dry up altogether. In the Flisrand Case it is pointed out that the same lake may be both navigable and nonnavigable. In that case the court quoting from Lamprey v. State (Metcalf), supra, say: "If the term 'navigable' is not capable of a sufficiently extended meaning to preserve and protect the rights of the people to all beneficial public uses of these inland lakes, to which they are capable of being put, we are not prepared to say that it would not be justifiable, within the principles of the common law, to discard the old nomenclature, and adopt the classification of public waters and private waters. But, however that may be, we are satisfied that, so long as these lakes are capable of use for boating, even for pleasure, they are navigable, within the reason and spirit of the common-law rule. When the waters of any of them have so far receded or dried up as to be no longer capable of any beneficial use by the public, they are no longer public waters, and their former beds, under the principles already announced, would become the private property of the riparian owners."

And again quoting from Lamprey v. State (Metcalf), supra: "What has been already said is sufficient for the purposes of the present case; but, to avoid misconception, it is proper to consider, what is the definition or test of 'navigability,' as applied to our inland lakes. The division of waters into navigable and nonnavigable is but a way of dividing them into public or private waters —a classification which, in some form, every civilized nation has recognized; the line of division being largely determined by its conditions and habits."

The question involved in this case is discussed at length in Hardin v. Jordan, supra, Lamprey v. State (Metcalf), supra, Ol-

son v. Huntamer, supra, and Flisrand v. Madson, supra, and the only conclusion that can be drawn from what is said in these cases when applied to the present case, is that the plaintiff is entitled to recover and that the judgment appealed from must be affirmed.