THE COMMISSIONERS OF LINCOLN PARK, Appellants, *vs.* WILLIAM H. FAHRNEY, Appellee.

*Opinion filed April 19, 1911—Rehearing denied June 7, 1911.*

1. CONSTITUTIONAL LAW—*the Park act of 1895, for reclaiming submerged land, is not invalid as a special law.* The Park act of 1895, (Laws of 1895, p. 282,) for enlarging parks by reclaiming submerged lands, is not invalid because it applies only to parks where the commissioners have been named in the act establishing the park and their successors have since been appointed by the Governor, as the general subject of parks is not included among those enumerated in section 22 of article 4 of the constitution, concerning which no local or special laws can be passed.

2. SAME—*the Park act of 1895 does not authorize destruction of riparian rights without compensation.* The Park act of 1895, (Laws of 1895, p. 282,) is not unconstitutional upon the ground that it authorizes the park commissioners to destroy riparian rights without compensation and without due process of law, as section 2 of the act makes express provision for the acquiring of such rights by contract, deed or condemnation.

3. SAME—*subjects of Park act of 1895 are embraced within its title.* The granting of submerged lands to the park commissioners and authorizing the filling, reclaiming and holding of such portions of submerged lands for park purposes are embraced within the general subject of Park act of 1895, (Laws of 1895, p. 282,) and this subject is sufficiently expressed in the title of such act.

4. SAME—*title of act need not refer to every detail in the body of the act.* The provision of section 13 of article 4 of the consti-

tution concerning the titles of acts does not require that the title shall refer to every detail in the body of the act necessary to effectuate the purposes of the statute.

5. WATERS—*shore owner does not lose title to submerged land in case of an avulsion.* In case of an avulsion, which is the washing away of a considerable portion of shore land by the sudden action of the water, the owner does not lose title but may reclaim the submerged portion and re-assert his ownership; but the mere fact that the shore line of a particular tract has receded somewhat in the course of time does not establish an avulsion.

6. SAME—*State had power to grant title to submerged lands in Lake Michigan.* The State had power to grant to the commissioners of Lincoln Park, for park purposes, the submerged lands of Lake Michigan, and shore owners have no right to erect piers or other structures on such submerged lands without the consent of the commissioners. (*Revell* v. *People,* 177 Ill. 468, *Gordon* v. *Winston,* 181 id. 338, and *Cobb* v. *Lincoln Park Comrs.* 202 id. 427, adhered to.)

7. SAME—*shore owners on Lake Michigan do not have riparian rights of owners on navigable streams.* The riparian right of a shore owner on Lake Michigan is limited to the right to pass from his land, within its boundaries, to the waters of the lake, but does not include the right to build piers or to wharf out, as may be done by a riparian owner whose title to the land, unless otherwise expressly limited, extends to the center thread of the stream. (*City of Peoria* v. *Central Nat. Bank,* 224 Ill. 43, explained.)

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is an appeal from a decree entered by the circuit court of Cook county denying the relief prayed in the original and supplemental bills filed by the Commissioners of Lincoln Park, appellants, and granting relief to appellee, Fahrney, upon his cross-bill. The original bill was filed by the appellants in 1897 against John Lewis Cochran, then the owner of blocks 1, 8, 9, 16, 17 and 21, in Cochran's addition to Edgewater, city of Chicago. The property described is a subdivision of the east fractional half of section 5, township 40, north, range 14, east of the third principal meridian, in Cook county, and bordered on the waters of Lake Michigan. The bill averred that Cochran

was constructing piers or bulkheads over the submerged lands of Lake Michigan without the consent of complainants; that complainants held the title to said submerged lands by virtue of an act of the legislature of the State of Illinois approved June 15, 1895, the terms of which act the complainants had fully complied with. The bill alleged that the said structures were purprestures, and would cause accretions to the adjoining shore and permanently and irreparably damage complainants. L. H. Brace, a contractor alleged to be engaged in doing the work, was made defendant. The bill prayed an injunction, and a temporary injunction was granted and issued on May 12, 1897, which remained in force until the hearing.

Cochran and Brace answered the bill in November, 1897, denying the effect of the further construction of piers and bulkheads would be to cause accretions and denying the title of complainants to the submerged lands. The answer averred that the submerged lands upon which it was intended to construct piers belonged to Cochran, or to other private persons connected with him in title whose consent he had to construct said piers. The answer further averred that prior to the passage of the act of 1895 Cochran's land extended two hundred feet further east than any piers had been built or were proposed to be built, but by violent avulsions of nature the land was torn or wrenched away, carried and deposited upon other parts of the shore, and the waters of the lake spread over the premises from their original boundary line to their present shore line. The answer averred Cochran still owned the land to the original shore line and had the right to construct piers thereon.

No step of any importance was taken after the filing of the answer, except a reference to the master to take proofs and report his conclusions of law and fact, until December, 1907, when appellee, Fahrney, who had purchased *pendente lite* lots 1 and 2 in block 9, filed a petition asking leave to become a party defendant. Leave was granted

and he filed an answer.  In his answer appellee claimed the benefit of any defense set up by Cochran.  Appellee alleged his property, lots 1 and 2, had a frontage west on Sheridan road of 104 feet and a depth of 216 feet, more or less, to the shore line of Lake Michigan; that appellee had built a costly residence upon the western end of his lots, a garage for his automobile about the middle on the south line of his lots, and from the east side of the garage to the waters of the lake he had constructed a slip or harbor dug out of the high land on his own property, to be used as a harbor or haven for his boat.  This slip was alleged to be less than forty feet wide, and the answer alleged appellee had the right, and it was his purpose, to build two piers, forty feet apart, from the west shore of the lake extending eastward fifty feet into the lake.  The space between the piers was to be for entrance into the slip or harbor constructed by appellee.  On the same day the answer was filed appellee filed a cross-bill, and in addition to the allegations contained in the answer the cross-bill alleged that since the passage of the act of 1895 the legislature had passed two additional acts, one on May 14, 1903, amending section 2 of the act of 1895, the other on May 2, 1907, entitled "An act authorizing park commissioners to acquire and improve submerged and shore lands for park purposes, providing for the payment therefor, and granting unto such commissioners certain rights and powers, and to riparian owners certain rights and titles."  The cross-bill alleged that by these three acts the riparian rights of owners of land on the shore of the lake were recognized and provided for, but that they authorized the destruction of said riparian rights without making compensation and without due process of law and are therefore unconstitutional and void.  The cross-bill further alleged that the appellee obtained the qualified consent of the appellants to construct the piers in question under certain conditions, but that appellee was unwilling to comply with the conditions.

The prayer of the cross-bill was that appellee be declared to have the right to construct the piers as proposed and that appellants be enjoined from interfering with said construction. Amendments to the cross-bill set up with more detail that the east part of appellee's lots had been torn away by avulsions, and that previous to said avulsions his land extended 715 feet further east than the present shore line, and the submerged shallows were claimed by him.

Appellants answered the cross-bill, denying the allegations of avulsion and all other material facts alleged in the cross-bill. On June 28, 1909, the appellants filed a supplemental bill, wherein, among other things, it is alleged that since filing the original bill the legislature passed the act of May 14, 1903, amending section 2 of the act of 1895; also another act of May 14, 1903, relating to the issuing of bonds for park extension purposes, and a third act of the same date providing for the construction of driveways or boulevards over the submerged shallows of Lake Michigan. These statutes are set out in the supplemental bill, and it is alleged that under their authority and for the purpose of carrying out the general plan of park extension the boundary line between the lots of shore owners and the submerged shallows have been settled by the park commissioners for long distances (specifically set forth and described) along the shore. The supplemental bill further avers that the town of Lake View, pursuant to the statutes, has issued bonds in the sum of $1,000,000 for park extension purposes; that this fund is now being used for that purpose, and the extension includes the shallows opposite appellee's property, the title to which is claimed by the appellant commissioners. The supplemental bill prayed that appellee be perpetually enjoined. Leave was granted for appellee's answer to the original bill as amended to stand as his answer to the supplemental bill.

A great deal of evidence, oral and documentary, was heard by the master from time to time, at the conclusion

of which he prepared a report, setting out and commenting upon the evidence at great length and containing an elab-. orate discussion of the law.   He found the title to the sub- merged land in question to be in the appellants, that the alleged avulsions had not been proven, and recommended that the cross-bill of the appellee be dismissed for want of equity and a decree entered upon the original and supple- mental bills as prayed therein.   Appellee filed objections to the report before the master.   He overruled them, and they were renewed as exceptions before the court.   The court sustained exceptions to the recommendation that the cross- bill be dismissed and that the relief prayed in the original and supplemental bills be granted, and entered a decree modifying the temporary injunction as to appellee's prop- erty and authorizing him to construct two rows of piers built of piles upon and over the submerged lands of the park commissioners, each extending from appellee's land eastward a distance not to exceed fifty feet, for the sole purpose of an entrance to a harbor constructed by the ap- pellee upon his lots and for no other purpose.   The decree authorized appellee to construct and use the piers over the submerged lands without interference, hindrance or restric- tion by the park commissioners until such time as the work of the extension of Lincoln Park now being carried on actually reaches the property owned by the appellee.   The court found and decreed that the act of 1895 and subse- quent acts were constitutional, and that by compliance with the provisions of the act of 1895 by the park commission- ers the title to the submerged lands lying between the north line of Grace street extended and Devon avenue (between which points appellee's lots are situated) became vested in the commissioners of Lincoln Park in fee simple, for park purposes; that the submerged land over which the appellee proposes to drive two lines of piles eastward from his shore line belongs to said park commissioners in fee simple, for park purposes.   The. decree further finds that the evidence

does not show that an avulsion occurred immediately east of appellee's property, and finds that appellee's land extends to the edge of the waters of Lake Michigan when they are at rest. This appeal is prosecuted by the park commissioners from the decree, and appellee has assigned, forty-nine cross-errors questioning the correctness of the decree in holding the acts of the legislature referred to constitutional, that the title to the submerged lands is in appellants and that the evidence did not sustain the allegations of the cross-bill as to avulsions.

CHARLES A. CHURAN, and HAMLIN & BOYDEN, for appellants.

ABIJAH O. COOPER, ARTHUR R. WOLFE, and HENRY C. NOYES, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The principal issues raised by the pleadings are: First, whether the title to the submerged lands opposite appellee's lots is in appellants. That it is, is denied by appellee on the ground that the act of 1895 and subsequent acts are unconstitutional, and also because it is claimed that appellee's lots extended 715 feet further into the lake than the present shore line, and parts of them were wrenched and torn away by violent avulsions of nature between 1872 and 1877 or 1880. Second, whether, by reason of appellee's lots abutting upon Lake Michigan, he is thereby vested, as riparian owner, with the right to build piers over the submerged lands for the purpose of access to the navigable waters of the lake.

Appellee has by the assignment of cross-errors challenged the constitutionality of the act of 1895, and subsequent park acts adopted in 1903 and 1907. The title of the act of 1895 is, "An act to enable park commissioners having control of any park bordering upon public waters

in this State to enlarge the same from time to time and granting submerged lands for the purpose of such enlargements and to defray the cost thereof." The first section provides "that in all cases where lands within specified boundaries bordering on public waters in this State have been declared to be a public park, and where the commissioners of such park have been named in the act establishing the same, and their successors have since been appointed by the Governor of this State, the said commissioners of any such park shall have power from time to time in their discretion to enlarge the same by reclaiming submerged lands under said public waters in the following manner." Then follow directions to be complied with by the park commissioners in the enlargement of the park, the preparation and adoption of plans therefor, the location of a boulevard or driveway, etc., and authority is given the commissioners to fill in and reclaim all the submerged land lying between the boulevard and the shore line, and "thereupon the title of such submerged lands over which the said boulevard or driveway is located, and of the said submerged lands between said boulevard as located and the shore line shall become and be vested in and is hereby granted to the said board of commissioners, in fee simple for park purposes, as hereafter in this act set forth." The second section authorizes the park commissioners to acquire, by agreement with the owner or by condemnation, the riparian rights of the owners of lands along the shore so far as it may be deemed necessary and desirable by the commissioners.

The grounds upon which the validity of this act is assailed are: First, that it applies only to a park bordering on public waters where the commissioners have been named in the act establishing the same and their successors have since been appointed by the Governor, and it is asserted in the brief of counsel for appellee that Lincoln Park is the only park in the State bordering on public waters the commissioners of which were named in the act and their suc-

cessors have since been appointed by the Governor, and that said act is for that reason special or class legislation; second, said act is unconstitutional in that it permits the park commissioners to destroy riparian rights of shore owners without compensation and without due process of law; and third, the act embraces more than one subject not contemplated in the title, in violation of section 4 of article 13 of the constitution.

We do not think there is any merit in any of these contentions. As to the first point, the constitution does not prohibit the passage of any local or special act but only prohibits the passage of local or special laws upon any of the subjects mentioned in section 22 of article 4. In *Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304, the constitutionality of an act in relation to parks was attacked on the ground that it was in violation of the prohibition against any local or special law regulating township affairs. In discussing the question the court said (p. 330) : "The constitution of 1870 does not prohibit the passage of all 'local or special laws,' as such. It only prohibits the passage of local or special laws in reference to the particular subjects mentioned in section 22 of article 4. * * * The first question, then, which arises, is whether the act of 1901 is an act regulating township affairs. If it is not, it is not necessarily a local or special law, because 'section 22 of article 4 does not prohibit the passage of local or special laws in regard to parks or regulating the affairs of parks." The act of 1895 is not in violation of any of the prohibitions of section 22 of article 4. The second contention is refuted by section 2 of the act itself. As to the third point against the constitutionality of the act, it is said section 1 authorizes the park commissioners to locate a boulevard or driveway and fix the termini thereof; that said section grants the submerged lands to the commissioners for the purpose of enlargement of the park, and authorizes filling, reclaiming, improving and holding portions of the submerged land des-

ignated in the plan adopted as a public park, and that these
matters are not contemplated by or expressed in the title of
the act. The act embraces but one general subject, viz., the
enlargement of parks bordering upon public waters, and to
enable this to be done the submerged lands are granted to
the park commissioners. This subject is sufficiently em-
braced in the title. The constitution does not require that
the title shall refer to every detail in the body of the act
necessary to effectuate the purposes of the statute. The
rule was stated in *People* v. *McBride,* 234 Ill. 146, in the
following language: "The only purpose of the provision
of the constitution is to prevent the joining in one act of
incongruous and unrelated matters, and the word 'subject'
is not synonymous with 'provision.' Any number of pro-
visions may be contained in an act, however diverse they
may be, so long as they are not inconsistent with or foreign
to the general subject and may be considered in further-
ance of such subject. The requirement that an act shall
embrace but one subject is not intended to hamper the legis-
lature or embarrass honest legislation, but it is intended to
prevent incorporating in an act matters not related to the
subject of legislation and of which the title gives no hint.
An act may contain many provisions and details for the
accomplishment of the legislative purpose, and if they legiti-
mately tend to effectuate that object the act is not contrary
to the constitutional provision."

Counsel has pointed out no valid objection to the valid-
ity of the Park acts of 1903 and 1907, and we see none,
and as in our view they are not involved in the decision of
this case it is unnecessary to discuss them.

A large part of the evidence heard by the master was
devoted to the question whether appellee's lots formerly ex-
tended farther eastward than the present shore line and
had been torn away by violent avulsions of nature. If this
were the case, then title to the submerged parts of the lots
was not lost to appellee and he might reclaim and re-assert

his title thereto. In considering what is an avulsion, and the rule of law in such cases, this court, in *City of Chicago* v. *Ward,* 169 Ill. 392, quoted with approval from Angell on Water-courses the following: "Where considerable quantities of soil are by a sudden action of the water taken from the land of one, this is called avulsion; but the ownership is not lost though the surface earth is thus transported elsewhere, and it may be reclaimed and the ownership re-asserted." It would unduly lengthen this opinion to set out the substance of the evidence on this question. It consisted of oral testimony, documentary evidence, maps and plats. Frank C. Taylor, formerly an owner of a portion of the east half of fractional section 5, of which the appellee's lots are a part, and who built a house on the property in 1872; James G. Wilson, agent for the property from 1872 to 1880, and Charles Ecklund, who was caretaker of and lived on the property from 1874 to 1882, testified on behalf of appellee, and their testimony, together with appellee's other evidence, including maps made by engineers purporting to show the former shore line, tended to show that prior to 1877 the shore of appellee's property was considerably farther east than it now is, and that between 1872 and 1877 or 1880 considerable portions of the land were torn and washed away by violent storms. Appellants' evidence tended to contradict this testimony and show that there was no great difference between the shore line prior to 1877 or 1880 and the present shore line. The master found that prior to 1874 the property now owned by the appellee extended much farther east but that the evidence was not sufficient to prove the alleged avulsion. The chancellor found and recited in the decree "that the evidence does not show an avulsion occurred immediately east of the defendant Fahrney's property, and further finds that the defendant Fahrney's land extends to the water's edge when the waters of Lake Michigan are at rest." After a careful examination of the record we are of the opinion

the weight of the evidence tends to support this finding of the decree.

While authority of the State to grant the title to the submerged lands of Lake Michigan to the park commissioners is denied by appellee, it was expressly decided in *People* v. *Kirk,* 162 Ill. 138, that the legislature did have such authority, and that a grant so made by it vested the title to the submerged lands in the park commissioners. Appellee does not, therefore, own the land over which he proposes to construct piers but said land belongs to and is the property of the park commissioners. What, then, are his rights, as riparian owner, of access over his land to the waters of Lake Michigan? This question has heretofore been three times before this court, (*Revell* v. *People,* 177 Ill. 468; *Gordon* v. *Winston,* 181 id. 338; *Cobb* v. *Commissioners of Lincoln Park,* 202 id. 427;) and as these cases, in our view, are conclusive of the question here involved and as the law was elaborately discussed in two of them, we regard it as unnecessary at this time to enter upon any original discussion, but will merely refer to the manner in which the question arose in those cases and what the court decided the law to be.

In the *Revell case* an information was filed in the name of the People, by the Attorney General, for an injunction to restrain Revell from building piers in the bed of Lake Michigan and to abate piers already built by him. Revell owned land bordering on Lake Michigan and had constructed piers in the lake east from the shore of his land at right angles with the shore and proposed to extend them still farther. The information alleged that Revell had by that means reclaimed land belonging to the State, and claimed the right, as riparian owner, to reclaim more of the submerged land and protect his land from erosion. In his answer Revell denied he built the piers to reclaim land in the lake but alleged it was to protect his land from erosion; denied his piers were purprestures and denied the

right of the State to cause them to be removed. The circuit court decreed that the submerged lands belonged to the State and that the piers built by Revell were purprestures, and he was enjoined from thereafter building any further structure upon the submerged lands. The decree found that the piers already built were not then detrimental to the public interest and would not become so until the State desired to claim and use the submerged lands upon which they stood, and the piers already built were permitted by the decree to remain until the State chose to take possession and use the submerged lands to the water's edge, at which time it was authorized to abate and remove the piers. Cross-errors were assigned by the Attorney General, and the decree was reversed on the ground that while it was in favor of the people it did not go far enough, and the case was remanded, with directions to the circuit court to enter a decree according to the prayer of the information. The opinion is a lengthy one and reviews the law on the subject from an early date to the present time, both in this country and in England. We quote excerpts from the opinion. On page 479 the court said: "The appellant here owned the premises bordering on the lake, but his title to the premises extended only to the water's edge, and the fee in and to the lands covered by the waters of the lake was vested in the State and held by the State in trust for the people. The fee being in the State, the important question presented is whether appellant, without a grant or other authority from the State, had the right to go upon the submerged lands and erect the structures complained of in the information. This State has adopted the common law as it existed prior to March 24, 1606,—the fourth year of James I,—and in the absence of any statute of the State changing the common law in regard to rights of riparian or littoral owners the common law as it then existed must control. Upon an examination of the authorities we think it is clear that the act complained of in the information was

a trespass upon the lands of the State; that the erection of the piers in the lake in front of the appellant's premises was a purpresture." On page 483 the court said: "The appellant had no right to build piers or 'wharf out' into the lake for the purpose of making land or increasing the boundary of his premises, nor had he the right to do any act which would produce that result. As has heretofore been said, the lands covered by the waters of the lake belong to the State, and appellant had no right, by any device whatever, to extend his boundary line beyond the water's edge, and when he did so an injury was inflicted on the rights of the State, which might be inquired into and abated in a court of equity on the application of the Attorney General."

In *Cobb* v. *Commissioners of Lincoln Park, supra,* the grant of the submerged land by the act of 1895 to the park commissioners was sustained. In that case Cobb owned a lot abutting on the west shore of Lake Michigan. He filed a bill against the Lincoln Park Commissioners alleging that as riparian owner he had a right to erect wharves out in the waters of the lake to the point of navigability; that the park commissioners claimed title to the submerged land in front of his property and refused to permit him to build a wharf out into the lake and threatened to use their police force to prevent his doing so. The bill prayed an injunction restraining the park commissioners from interfering with complainant in the construction of his wharf. The bill was dismissed on the hearing for want of equity and this court affirmed the decree. The court said: "The only question in this case, as stated by appellant, is whether the owner of land bordering on and adjacent to the waters of Lake Michigan has a right of access from his own property to a point in the lake where the waters are navigable, and whether, in the exercise of this right, he may erect a wharf or pier from his shore line over the submerged lands in the shallow water to the point of navigability in the lake. Appellant insists that the riparian owner has this right of ac-

cess, and that it includes the right to wharf out,—that is, to erect wharves and piers in front of his land," and again held, as had been previously held in the *Revell case,* that the riparian owner's right of access from his land to the lake was the right to pass to and from the waters of the lake within the width of his premises as they bordered thereon, but he had no right, by virtue of being a shore owner, to construct piers on the submerged land without the consent of the owner. In the opinion the court cited and quoted from *Revell* v. *People, supra,* and other cases, and said (p. 432): "The property in the dry land or upland being in one person and the property in the submerged land immediately in front thereof being in another, it would seem to be only consonant with legal principles that the consent of the latter must be obtained before any erections can be put on the submerged soil." And on page 437 the court said: "After a careful reading of the authorities we see no reason to recede from the position taken in the *Revell case,* and are satisfied that by the common law, unmodified by local usage, custom or statute, a riparian owner had no right to build any structures on the submerged lands in front of his own land unless he owned such submerged lands or had a license to do so. The title of the owner of such submerged lands is not burdened with an easement in favor of the owner of the adjoining upland to build wharves out to navigable water. Such being the common law, it is the law of this State until altered by the legislature." In both the *Revell* and *Cobb cases* the court cited and quoted with approval from *Shively* v. *Bowlby,* 152 U. S. 1, which is in strict accord with those cases.

In *Gordon* v. *Winston, supra,* the right of the Lincoln Park Commissioners to enjoin the erection of piers upon the submerged lands of Lake Michigan by a shore owner was sustained in a short opinion, in which it was held *Revell* v. *People* was decisive of the question.

Appellee insists the *Revell* and *Cobb cases* are contrary to the current of authority elsewhere, and also that they are not directly in point upon the question here involved. The case of *Trustees of the Town of Brookhaven* v. *Smith,* 188 N. Y. 74, is cited as laying down a different and correct rule. If, as contended, that case sustains the right of appellee to build piers over the submerged lands of Lake Michigan, it is in conflict with *Shively* v. *Bowlby, supra,* and the three decisions of this court referred to. We could not follow the *Brookhaven case* without overruling those three decisions, which we are not convinced we would be justified in doing.

Appellee also quotes from *City of Peoria* v. *Central Nat. Bank,* 224 Ill. 43, the expression, "riparian owners upon navigable fresh water lakes may construct in the shore waters in front of their lands wharves, piers, landings and booms in aid of and not obstructing navigation," and argues this is the last expression of this court and is in harmony with the correct rule. In that case the court was dealing with land bordering upon the Illinois river. In such cases a grant of land bordering on the stream carries title to the center thread of the stream unless the boundary is in some way otherwise determined. The passage quoted was used in view of that situation and stated the law correctly as applicable to the case. It is in nowise in conflict with the *Revell, Cobb* and *Gordon cases.* Indeed, the *Revell case* and *Gordon* v. *Winston* are cited in the opinion with approval. The rule applicable to lands bordering upon a stream was insisted upon by counsel as the proper rule to be applied in the *Revell case.* Upon this question the court said in the *Revell case* (p. 486) : "It is, however, suggested in the argument that this court, in passing upon the rights of riparian owners upon the Mississippi and other rivers in the State navigable in fact but not navigable at law, has held the shore owner may wharf out from the shore into the stream, and that the same doctrine

should be extended to a shore owner on Lake Michigan. Those cases have no bearing here, for the reason that they all are predicated on the theory that the line of the riparian owner extends to the center thread of the stream. Being the owner of the soil under the water he had the right to build such structures on his own land as he might desire, except such as might interfere with the navigation of the stream. Under the rule established in those cases, beginning with *Middleton* v. *Pritchard,* 3 Scam. 510, it was held in *Ensminger* v. *People,* 47 Ill. 384, that a riparian owner in the Ohio river having the title to the land between high and low-water mark, and the right to the exclusive use thereof, had the right to establish a private wharf on his land and make reasonable charges for its use by those navigating the river. The right, however, as is apparent from the rule established in the case, rests upon the ownership of the underlying soil."

Up to the present time appellants have not attempted to destroy appellee's riparian right to pass over his land, within the width of its boundaries, to the waters of the lake. That question, as was said in the *Revell case,* will arise when the appellants undertake to condemn appellee's riparian rights or appropriate the submerged lands upon which appellee's lots abut. This proceeding does not affect or tend to destroy any of appellee's riparian rights.

We are of opinion the circuit court erred in authorizing the construction of the piers by appellee and in enjoining the appellants from interfering with their construction and maintenance by appellee until such time as the submerged land opposite appellee's property is desired to be used by appellants in the plan of park enlargement and extension. The decree is therefore reversed and the cause remanded to the circuit court, with directions to enter a decree dismissing the cross-bill and granting the relief prayed in the original and supplemental bills.

*Reversed and remanded, with directions.*