ANDERSON et al., Appellants, v. RAY et al., Respondents.

(156 N. W. 591.)

(File No. 3770.    Opinion filed March 4, 1916.    Rehearing denied April 11 ,1916.)

1.  Waters—"Navigable Lake"—"Public Waters"—Rights of Public as to Recreative Resort—Statute.

    A meandered lake covering several thousand acres when at high-water mark, whose depth depends entirely upon the seasons, being two to four feet deep in seasons following unusual rain- or snowfall, but which in a succession of dry seasons contains water in but a few of the lower portions of its bed, and which may have an underground outlet, is a "navigable lake," within the meaning of Laws 1913, Ch. 18; authorizing county commissioners to construct artesian wells for the purpose of maintaining water in meandered lakes to make them available for rowing, fishing, fowling, bathing, and for other purposes, and such waters are "public waters" belonging to the state for the benefit of the people, and should be preserved as places of recreation.

2.  Waters—Navigable Lake—Receding Waters—Reliction.

    That during a series of dry seasons the water in a meandered lake recedes until the greater part of the entire bed is dry, but

during thirty-five years no permanent diminution of water flow-ing into it was experienced, does not show a reliction of land on its border by a permanent retirement of water therefrom.

3. **Appeals—Review—Lake Bed Lands—Erroneous Finding of Re-licted Land—Harmless Error—Statute.**

In a suit by riparian owners to enjoin filling of a large meandered lake with artesian waters, pursuant to Laws 1913, Ch. 18, for purposes of recreation therein specified, no reliction of the bed of the lake having occurred to vest title thereto in riparian proprietors, held, that a conclusion of law that title to all relicted lands of said lake was in the state, is erroneous and misleading, as implying that the state took title by relic-tion, and that reliction had taken place; but it is not prejudi-cial as against plaintiffs.

4. **Navigable Waters—Meandered Lake Bed—Title to Submerged Non-relicted Land—Public Rights—Statute.**

The state is the owner of the bed of a meandered lake on whose borders adjacent to riparian proprietors no relicted land exists; such ownership being subject to the limitations of Civ. Code, Sec. 192, declaring that ownership of land below the water of a navigable lake is regulated by federal or state laws; and the state holds such title in trust for the benefit of the public.

5. **Same—Meander Line of Lake—Boundary of Riparian Owner's Land—Low-water Mark Distinguished from Meander Line—Statute.**

Under Civ. Code, Sec. 289, a riparian proprietor takes title to the low-water mark of a navigable lake, his qualified owner-ship not being limited to the meander line.

6. **Waters—Lake Waters Between High and Low-water Mark—Right of Public to Use, as Against Riparian Owners—Injunc-tion—Statute**

The title of a riparian owner of land between high and low-water mark in a meandered lake being qualified or limited by and subject to the rights of the public, held, that the state may raise the level of the waters by flowage from artesian wells, sufficient to make them available for fishing, rowing, bathing, etc., under Laws 1913, Ch. 18, and such owners may not en-join their use for those purposes.

7. **Same—Meandered Lake Bed—"High-water" Mark—Duration of Occupancy of Water as Test.**

"High-water" mark, as applied to fresh-water lakes, and as a line between riparian owners and the public, means a water-mark, being coordinate with the limit of the lake-bed occupied by water sufficiently long and continuously to destroy its value for agricultural purposes; and is a question of fact to be de-termined in each case.

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by O. E. Anderson and others, against Fred Ray and others, to enjoin the raise of water in a meandered lake from flowage from artesian wells. From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Brown & Brown*, for Appellants.

*C. C. Caldwell*, Attorney General, *Byron S. Payne*, Assistant Attorney General, and *E. R. Slifer*, State's Attorney, for Respondent.

(1) To point one of the opinion, Appellants cited: Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447, (Ark.); 29 Cyc. 293; Bolsa Land Co. v. Burdick, 90 Pac. 532 (Cal.); Micelli v. Andrus, 120 Pac. 737 (Ore.); People v. Economy Light and Power Co., 89 N. E. 760 (Ill.).

Respondents cited: State v. Korrer, (Minn.) 148 N. W. 617, 621; State ex rel. Cates v. West Tenn. Land Co., 127 Tenn. 579, 158 S. W. 746, 32 Ann. Cas. 1043; Attorney General v. Woods, 108 Mass. 436; 1 Lewis, Eminent Domain, (3rd Ed.) pp. 113, 115; Shulte v. Warren, 218 Ill. 108, 75 N. E. 783, 13 L. R. A. (N. S.) 745; Runyard v. Ice Co., 142 Wis. 471, 125 N. W. 931; State v. Jones, (Iowa) 122 N. W. 241.

(2) To point two of the opinion, Respondent cited: Sapp v. Frazier, 51 La. Ann. 1718, 26 So. 378, 72 Am. St. Rep. 493; Stover v. Jack, 60 Pa. 339, 100 Am. Dec. 566.

(3) To point three of the opinion, Appellants cited: Sec. 17, Enabling Act.

Respondents cited: Civil Code, Sec. 289.

(4) To point four of the opinion, Appellant cited: Olson v. Huntamer, 6 S. D. 364; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808; Scheifert v. Briegel, 96 N. W. 44 (Minn.) Sherwin v. Bitzer, 106 N. W. 1046 (Minn.) Calkins v. Hart, 118 N. Y. S. 1049; Foss v. Johnstone, 110 Pac. 294 (Cal.) Rhodes v. Cissell, 101 S. W. 758 (Ark.) Conneaut Lake Ice Co. v. Quigley, 74 Atl. 648 (Pa.)

Respondents cited: Illinois Cent. Ry. Co. v. Illinois, 146 U. S. 387, 459, 36 L. Ed. 1018; 8 Ency. U. S. Sup. Crt. Rep., 821-83, 828, 830-1, 833-4, 839-40, and cases cited; Vol. 4, Ency.

U. S. Supt. Crt. Rep. 159, 160, and cases cited; State v. Korrer, (Minn.) 148 N. W. 617, 621; Civ. Code, Secs. 191-2; Laws 1913, Ch. 18, Sec. 1; Sec. 289, Civil Code; Vol. 1, Farnum, Waters and Water Rights, Sec. 54; Sec. 1, Chap. 180, Laws 1907; 40 Cyc. 630-7, and cases cited; Fuller v. Shedd, 161 Ill. 462, 44 N. E. 286, 33 L. R. A. 146, 52 Am. St. Rep. 280.

(5) To point five of the opinion, Appellants cited: Cawlfield v. Smyth, (Ore.) 138 Pac. 227.

Respondents cited: Civ. Code, Sec. 289; Security Land Co. v. Burns, 193 U. S. 167, 48 L. Ed. 662; Niles v. Cedar Point Club, 175 U. S. 300, 308, 44 L. Ed. 171; Horne v. Smith, 159 U. S. 40, 40 L. Ed. 68; Brown v. Cunningham, 82 Iowa, 512, 12 L. R. A. 583; Cox v. State, 3 Blackf. 193; Wright v. Day, 33 Wis. 260; Vol. 3, Ency. U. S. Sup. Crt. Rep. 481; French v. Glenn Live Stock Co., 185 U. S. 47, 52, 46 L. Ed. 800.

(6) To point six of the opinion, Appellants cited: Boll v. Ostroot, 127 N. W. 577, 25 S. D. 513; 30 Am. and Eng. Ency. of Law, 377 (2nd. Ed.)

POLLEY, P. J. Chapter 18, Laws of 1913, undertakes to empower the board of county commissioners, in counties where there may be meandered lakes, to construct artesian wells for the purpose of maintaining a sufficient quantity of water in such lakes to make them available for "rowing, fishing, fowling, bathing, or other purposes"; and, in the spring of 1913, the defendants, acting as the county auditor and board of county commissioners of Brule county, were about to cause the construction of four artesian wells in that county for the purpose of filling and maintaining a sufficient stage of water in what is known as Red Lake to make it available for the purposes specified in said statute.

Red Lake is a meandered body of water with an area of approximately 3,700 acres, and plaintiffs are the owners of land bordering thereon. They allege that, except during season of unusual rain or snowfall, the bed of said lake is dry land, and that; because of their riparian ownership, they are the absolute owners in fee of all that part of said lake bed, from its edge to the center of said lake bed, lying opposite to their lands. During many years in the past they have used considerable tracts of said lake bed as a place of making hay and pasturing stock, and they now

seek, by injunction, to prevent the filling of said lake by artificial means.

The depth of the water in said lake, and in fact whether it contains any water at all or not, depends almost entirely upon the seasons. There are several streams (one of which is known as Nelson's creek and is 25 to 30 miles long) which empty into the lake, but there is no uniformity in the volume of water they contain; and, during much, if not the greater portion, of each year, they do not discharge any water at all into the lake. During seasons of an unusual amount of rain or following an unusual fall of snow, the lake fills with water to a depth of from two to four, or more, feet over its entire bed; but, during a succession of dry seasons, the water gradually dries up and recedes from its shore line until it is in only a few of the lower portions of the lake bed that any water remains. There is some evidence tending to show—and the court found as a fact—that the lake has an outlet. This finding is assailed by the plaintiff on the ground that it is not supported by the evidence, and the evidence on this point is not very satisfactory. If the lake has an outlet, it is through an underground channel that is by no means definitely located. But it is a significant fact that, no matter how great the volume of water that flows into the lake, it never rises above a certain level, and except at one place designated by one of the witnesses, has never been known to rise above, or extend beyond, the meander line. The question of the outlet is not of much materiality, except that it negatives any assumption or probability that the water will, in the future, rise above or extend beyond the natural high-water mark or submerge any of the land to which plaintiffs' title is unqualified.

[1] The size and depth of the lake and the purposes for which it has been used during times of ordinary high water in the past show clearly that, if the water is maintained at ordinary high-water mark, it will be susceptible of all the uses named in said chapter 18, Laws of 1913. This places it in the class designated in Flisrand v. Madson, 35 S. D. 467, 152 N. W. 796, as "navigables lakes." Such lakes are "public waters" and belong to the state for the benefit of all the people. Such bodies of water are of value to the public as mere places of recreation, and ought to be preserved by the state for such purposes, if for no other.

[2] After a consideration of the record before us, we are of the opinion that much of what is said in the Flisrand case applies to the facts in this case. Plaintiffs are claiming the land in question as relicted land, and rely largely upon what is said in Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479, in support of such claim; but that case is not analogous to this, and what is said in that case is not controlling in this. That case was tried and determined upon the theory that a reliction, in fact and in law, had occurred. It was a contest between two individuals for a portion of a lake bed from which the water was assumed to have permanently receded.

In this case no reliction is shown. During a series of dry seasons, the water gradually recedes from the shore line until the greater part of the entire lake bed becomes dry. This condition has existed at different times within the past 35 years, but this is not a permanent condition. There has been no permanent diminution in the quantity of water that flows into the lake, and it is recognized by all parties that a rainy season or an unusually heavy fall of snow will fill it again. The testimony shows that, at the time of the trial, in July, 1913, practically the entire bed of the lake was dry, but it was conceded by counsel for plaintiffs, at the argument in this court, that it had since filled and was full of water at that time. This condition does not show a reliction. In the Flisrand case (speaking of what constitutes a reliction in law) this court said:

"Reliction is land added to a tract fronting upon the waters of a lake, pond, or stream, by the permanent uncovering of the land—the laying bare of the bottom by the permanent retirement of the waters, never to return again. The temporary subsidence of the waters occasioned by the seasons, or by periods of drought, does not constitute reliction in the sense of an addition to the contiguous land. Reliction is said to rest in the law of nature, and is analogous to the right of the owner of a tree to its fruit. Reliction is a permanent change that takes place by gradual and imperceptible degrees. Where water periodically rises over land and then recedes, there is no reliction."

In fact the term reliction, as it is defined by courts and textwriters, implies an element of permanency of change in conditions

that is not shown to exist, nor even suggested, by the facts in this case.

[3-5] The trial court made the following conclusion of law:

"That the title to all the relicted lands within the meander line of said Red Lake district is in the state of South Dakota, subject to the disposal of proper legislation."

Plaintiffs vigorously contend that this conclusion of law is erroneous. So far as the rights of plaintiffs are concerned, it is not prejudicial, but it is inaccurate and, to some extent, it is misleading. It implies that the state took title by reliction. This is wrong: First, because, as we have already seen, no reliction has ever taken place; and, second, the effect of a reliction, where a reliction has in fact taken place, is to divest the state of its title and to vest the same in the riparian owner. Olson v. Huntamer, supra. Tested by the rule announced in the Flisrand case and the cases therein cited, the state is the owner of the bed of Red Lake subject, of course, to the limitation named in that case. Section 192, Civ. Code. In considering the question of ownership of the lake bed, in the Flisrand case, it is said:

"And when we say that the state is the owner of the bed of said lake we do not mean that the state is the proprietary owner in the sense that the state might sell or otherwise dispose of same to private individuals for private ends, but that the state holds the title to such lake bed in trust for the benefit of the public. Lamprey v. State, supra [52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541]; People v. Kirk, 162 Ill. 138, 45 N. E. 830, 53 Am. St. Rep. 277; I. C. Ry. Co. v. Chicago, 173 Ill. 471, 50 N. E. 1104, 53 L. R. A. 408; Commissioners v. Fahrney, 250 Ill. 256-266, 95 N. E. 194; Fuller v. Shedd, 161 Ill. 462, 44 N. E. 286, 33 L. R. A. 146, 52 Am. St. Rep. 380."

Again, the conclusion of law complained of implies that the meander line is the boundary of plaintiffs' land. This implication is erroneous and misleading, as it is the low-water line, and not the meander line, that limits the plaintiffs' ownership. Section 289, Civ. Code. In the Flisrand case, the question of the boundary line was disposed of in the following language:

"Under this view of the case the plaintiff had title to the edge at low-water mark on said lake. Neither high nor low water mark means the highest or lowest point reached by the waters of

a. lake during periods of extreme and continued freshets, or peri-
ods of extreme and continued drought, but does mean the high
and low points of variation of such waters under ordinary con-
ditions, unaffected by either extreme. Farnham on Water Rights,
p. 1461; Carpenter v. Board of Commissioners, 56 Minn. 513, 58
N. W. 295; Dow v. Electric Co., 69 N. H. 498, 45 Atl. 356, 76
Am. St. Rep. 189; Stover v. Jack, 60 Pa. 339, 100 Am. Dec. 566;
McBurney v. Young, 67 Vt. 574, 32 Atl. 492, 29 L. R. A. 539.
While the title of the riparian owner on navigable or public waters
extends to ordinary low-water mark, still his title is not absolute,
except to ordinary high-water mark, and as to the intervening
shore space between high and low water mark the title of the
riparian owner is qualified or limited by and subject to the rights
of the public. Sections 192 and 289, Civil Code; Carpenter v.
Board of Commissioners, supra; Stover v. Jack, supra. See note
to Arnold v. Mundy, 10 Am. Dec. 388."

[6, 7] The title of the riparian owner to the strip of land be-
tween high and low water mark being "qualified or limited by and
subject to the rights of the public," it becomes necessary to de-
termine the extent to which the public may use or exercise con-
trol over said intervening strip, and whether the state may raise
the water by artificial means and maintain it at a sufficient height
to make it susceptible of the public uses named in said chapter
18, Laws of 1913. This question was not involved in the Flis-
rand case, nor has it ever been presented to or decided by this
court; but it has been the subject of frequent consideration by
other courts, and it appears to have become a well-settled rule of
law that, as to said intervening strip, the state may not only use
it for purposes connected with navigation, but may prevent it
from being put to any use that would interfere with navigation.
In Sisson v. Cummings, 35 Hun (N. Y.) 22, the court, in con-
sidering this question, said:

"* * * The owner of land bordering on waters where the
tide ebbs and flows, or on inland navigable waters where the tide
does not ebb and flow, has a legal right to possess and occupy
the land between high and low water mark, subject, however, to
the right of the state to take the land for its own use, or to au-
thorize it to be taken by a corporation for public use, and also
subject to the right of the public to use it in aid of navigation.

The adjoining owner may occupy to low-water mark for watering his stock, drawing water for irrigation or manufacturing; he may build 'wharves or occupy the land for any private purpose not inconsistent with the rights of the public."

And, in Carpenter v. Board of Commissioners, 56 Minn. 513, 58 N. W. 295, the court, in considering the right of the public to appropriate the strip of land between high and low water mark, said:

"While the title of a riparian owner on navigable or public waters extends to ordinary low-water mark, yet it is unquestionably true that his title is not absolute, except to ordinary high-water mark. As to the intervening space, the title of the riparian owner is qualified or limited by the public right. The state may not only use it for purposes connected with navigation without compensation, but may protect it from any use of it, even by the owner of the land, that would interfere with navigation. It may be conceded, as claimed by respondent, that 'within the banks, and below high-water mark, the public right is supreme, and that damages to riparian proprietors are *dammum absque injuria.*"

And, upon the question "what is high-water mark," the court further said:

" 'High water,' as applied to the sea, or rivers where the tide ebbs and flows, has a definite meaning. It is marked by the periodical flow of the tide, excluding the advance of the water above the line, in the case of the sea, by winds and storms, and, in the case of the river, by floods and freshets. But, in the case of fresh-water rivers and lakes—in which there is no ebb and flow of the tide, but which are subject to irregular and occasional changes of height, without fixed quantity or time, except that they are periodical, recurring with the wet or dry seasons of the year—high-water mark, as a line between the riparian owner and the public, is to be determined by examining the bed and banks, and ascertaining where the presence and action of the water are so common and usual, and so long-continued in all ordinary years, as to mark upon the soil of the bed a character distinct from that of the banks, in respect to vegetation, as well as respects to nature of the soil itself. 'High-water mark' means what its language imports—a water mark. It is co-ordinate with the limit of the bed

of the water; and that, only, is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes. Ordinarily, the slope of the bank and the character of its soil are such that the water impresses a distinct character on the soil, as well as on the vegetation. In some places, however, where the banks are low and flat, the water does not impress on the soil any well-defined line of demarkation between the bed and the banks. In such cases, the effect of the water upon vegetation must be the principal test in determining the location of high-water mark, as a line between the riparian owner and the public."

This latter case appears to be the leading case upon this subject, and has been followed or cited with approval in the following cases: State v. Kandiyohi County, 119 Minn. 132, 137 N. W. 298; Ephraim Creek Coal & Coke Co. v. Bragg et al. (W. Va.) 83 S. E. 190; State v. Nolegs et al., 40 Okla. 479, 139 Pac. 943; C. Beck Co. v. City of Milwaukee, 139 Wis. 340, 120 N. W. 293, 131 Am. St. Rep. 1061; Merrill et al. v. Board et al., 146 Iowa, 325, 125 N. W. 222; Stenberg v. Blue Earth County et al., 112 Minn. 117, 127 N. W. 496; Hobart v. Hall et al. (C. C.) 174 Fed. 433; Sun Dial Ranch v. May Land Co., 61 Or. 205, 119 Pac. 758; Hall et al. v. Hobart, 186 Fed. 426, 108 C. C. A. 348; State v. Korrer et al., 127 Minn. 60, 148 N. W. 617, 1095; Flisrand v. Madison, 35 S. D. 457, 152 N. W. 796.

Whether or not the character of the soil and vegetation along the shores of Red Lake is such as to indicate the high-water mark does not appear from the evidence in this case, but undoubtedly there are certain objects or indications along said shore line from which such high-water mark can be ascertained. This is a question that must be determined by the facts at hand in each case. It might be that it could be determined by the depth of the water in certain places, or it might be determined by the natural outlet ,if it has one, as was done in Merrill v. Board of Commissioners, supra.

This disposes of all the questions necessary to a determination of the whole case. It is our opinion, and we so hold, that, as to the strip of land below ordinary high-water mark, the title of the appellants is subject to the superior right of the public, that the state has the right to raise the water in the manner provided by

chapter 18, Laws of 1913, and to maintain it at such ordinary high-water mark, by either natural or artificial means, and that such damage, if any, as may result to the appellants as riparian owners, is a damage for which they are not entitled to recover.

The judgment and order appealed from are affirmed.