Raymond RUTTEN, Plaintiff and
Respondent,

v.

STATE of North Dakota, the Garrison Diversion Conservancy District and State Water Conservation Commission, Defendants and Appellants.

No. 7786.

Supreme Court of North Dakota.

Dec. 31, 1958.

Duffy & Haugland, Devils Lake, for plaintiff and respondent.

Leslie R. Burgum, Atty. Gen., Roy A. Holand, La Moure, and I. A. Acker, Bismarck, for defendants and appellants.

HARRY E. RITTGERS, District Judge.

Plaintiff for his cause of action alleges that he is the owner of various tracts of land in Secs. 2, 3, and 4, in Twp. 152, N. of R. 63 W., and part of Sec. 34, Twp. 153, R. 63 W., which lands abut on the shore of Devils Lake. That said Lake has gradually receded leaving a large dry area adjacent to said described lands, title to which has accrued to the plaintiff as riparian owner. That the defendants are threatening to divert water from the Missouri River, and

elsewhere, into Devils Lake which will overflow and flood the lands owned by plaintiff as riparian owner without compensation, and plaintiff prays for an injunction restraining such threatened acts.

The Answer admits that defendants intend and propose to proceed under the laws of N. D. and in co-operation with the U. S. Govt. under Act of Congress approved Dec. 22, 1944 (58 Stat. 887) to accomplish the purposes set forth in Ch. 348, Laws of N.D.1955, NDRC 1957 Supp. 61–2401 et seq., which, among other things, are intended "to replenish the waters, and restore the level of Devils Lake, Stump Lake, Lake Williams and Turtle Lake," which will be accomplished by diverting water from the Missouri River above the Garrison Dam into Devils Lake and by which the level of that Lake will be raised and the height of which will then be controlled by the operation and maintenance of proper facilities, and that the waters of the Lake will be made available "for recreation, municipal, industrial purposes, navigation, and other beneficial uses"; and "that the lands which will be flooded when Devils Lake is raised to the level proposed by defendants, consists of lands which in 1882, and for many years thereafter, were lake bottom from which the waters of the Lake have gradually and perceptibly but not permanently receded." The Answer admits that plaintiff owns the lands described in the Complaint "except * * * defendant claims the legal right to restore and maintain the integrity and level of Devils Lake if and when public welfare will be promoted thereby, and to restore such Lake to a level within the high water mark thereof."

Thereafter, the parties joined in a stipulation of facts, as follows:

"That Devils Lake is a body of water situated in Ramsey and Benson Counties of North Dakota covering an extensive area of land; that the lake constitutes a basin for a drainage area comprising approximately 3,400 square miles in the north central and northeastern part of North Dakota; that the lake is landlocked and does not have an outlet.

"That Devils Lake is a body of water navigable in fact; that in 1883 boats were operated thereon for commercial purposes and that the same continued until about 1910; that commencing about 1885 the level of the lake started to decline and, with certain variations from year to year, it continued to decline until about 1940 when the level reached 1402 feet above sea level and the depth of the water was at no place more than 4 feet; that there were several causes for the drying up of the lake, including a diminution of rainfall and snowfall and the breaking up of large tracts of land in the drainage area, resulting in the absorption of much of the run-off which formerly had gone into the lake; that variations in the level of the lake are shown by the following table:

| Year | Level of Devils Lake above mean sea level |
|------|------|
| 1867 | 1438 Ft. |
| 1879 | 1435 Ft. |
| 1883 | 1435 Ft. |
| 1887 | 1427 Ft. |
| 1890 | 1425 Ft. |
| 1896 | 1425 Ft. |
| 1901 | 1419 Ft. |
| 1910 | 1422 Ft. |
| 1920 | 1420 Ft. |
| 1930 | 1412 Ft. |
| 1940 | 1402 Ft. |
| 1950 | 1416 Ft. |
| 1956 | 1419 Ft. |

"It is further stipulated and agreed that when waters of the Missouri River are diverted into Devils Lake the level thereof will be controlled through the construction, maintenance and operation of devices by which waters of the Lake, after reaching a desired level, will flow into Stump Lake and from there into the Sheyenne River. That

in order to raise the level of the lake to 1425 feet above mean sea level it will be necessary to inundate a strip of land around the lake from which waters have in past years receded, 962 feet in average width; and by raising the level of that part of the lake, known as the west bay, 10,620 acres of land from which the lake has receded will again be covered with water and that 2,460 such acres of land will be inundated by east bay of the lake.

"It is further stipulated and agreed that the greater part of the lands which will be flooded if Devils Lake is raised to a level of 1425 feet is not good agricultural land but nevertheless, parts of it have been subject to cultivation and have produced in certain years paying crops of flax and other grains; that most of the land is covered with coarse grass which is not desirable for livestock but which has and does provide pasturage for a substantial number of livestock."

Since it is conceded that Devils Lake is navigable in fact, it constitutes public waters under the laws of this State.

"47–0115. Banks and Beds of Streams; Boundary of Ownership. Except when the grant under which the land is held indicates a different intent, the owner of the upland, when it borders on a navigable lake or stream, takes to the edge of the lake or stream at low watermark. All navigable rivers shall remain and be deemed public highways. In all cases when the opposite banks of any stream not navigable belong to different persons, the stream and the bed thereof shall become common to both."

Roberts v. Taylor, 47 N.D. 146, 181 N.W. 622.

"On the admission of a state to the union, the title of the United States to lands underlying navigable waters within the state passes to it, as incident to the transfer to the state of local sovereignty, and is subject only to the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce." Ozark-Mahoning Co. v. State, 76 N.D. 464, 37 N.W.2d 488.

The defendants are proceeding under the authority granted them by Secs. 61–1502 and 61–1503, N.D.R.C.1943, and Ch. 348, Laws 1955.

It is admitted to be the purpose of the defendants by artificial means to raise the level of the Lake to 1425 feet above mean sea level. The trial court held the 1419 ft. level attained in 1956 to be the ordinary high water level of Devils Lake.

The burden of proof rested upon the plaintiff in this case to establish the high water level of the lake to be at 1419 feet. For evidence to prove such a fact we must look solely to the stipulation quoted above. There is no other evidence before the Court.

The table referred to in the stipulation shows that the Lake stood at a height of 1,425 feet or higher during known history up to the year 1890, and then dropped to a level of 1,419 ft. in 1901. Thereafter, the height dropped to 1,402 ft. in 1940, and then raised to a level of 1,419 ft. in 1956, where it had stood in 1901, or 55 years before. The only time this level was exceeded during said period was in 1910 when the Lake reached 1,422 ft., and in 1920 when it reached 1,420 ft. There is no evidence in the record supporting the stipulation that there has been a diminution of rainfall and snowfall during the period under consideration, but the court will take judicial notice of the fact that for a period of about 10 years from 1929 to 1940 the area of this Lake, and of the whole State, sustained the longest and most severe drought known in our recorded history.

We feel that the evidence is insufficient to sustain plaintiff's contention to the effect that the waters of Devils Lake have

permanently receded and that the ordinary high water line of the Lake stands at 1419 feet above mean sea level.

■ It is also impossible from the evidence to determine any definite height the lake has attained at any time in the past which would meet the conditions of the definition of "ordinary high water mark." The evidence before the court fails to warrant the conclusion that there has been a permanent reliction to the present level of the lake, or that the waters in the lake will never again reach some higher level.

" 'Ordinary high-water mark' shall mean that line reached by water when the lake or stream is ordinarily full and the water ordinarily high." N.D. R.C. Sec. 61–1501.

"From evidence as to the height of water in a lake in different seasons and in different years, without the water marks on the soil or their elevations, it is impracticable to locate the high water mark, defined as the line which the water impresses on the soil as the limits of its dominion." Merrill v. Board of Supervisors, 146 Iowa 325, 125 N.W. 222.

"[It] means neither an extremely high nor an extremely low water line, but, * * * refers to the ordinary high-water mark." Ross v. Burkhard Inv. Co., 90 Cal.App. 201, 265 P. 982.

" 'High-water mark' means what its language imports—a water mark. It is co-ordinate with the limit of the bed of the water; and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes. * * * In some places, however, where the banks are low and flat, the water does not impress on the soil any well-defined line of demarcation between the bed and the banks.

"In such cases the effect of the water upon vegetation must be the prin-

cipal test in determining the location of high-water mark as a line between the riparian owner and the public. It is the point up to which the presence and action of the water is so continuous as to destroy the value of the land for agricultural purposes by preventing the growth of vegetation, constituting what may be termed an ordinary agricultural crop." Tilden v. Smith, 94 Fla. 502, 113 So. 708. 56 Am.Jur., Waters, Sec. 57. 67 C.J., Waters, Ch. IV; 93 C.J.S. Waters § 103. 9 C.J., Boundaries, Sec. 74; 11 C.J.S. Boundaries § 32. 45 C.J., Navigable Waters, Sec. 191; 65 C.J.S. Navigable Waters § 81. Anderson v. Ray, 37 S.D. 17, 156 N.W. 591.

The judgment of the lower court is reversed and the action dismissed.

GRIMSON, C. J., and BURKE and SATHRE, JJ., concur.

MORRIS, J., deeming himself disqualified did not participate.